56 N.J. Super. 26 (1959)
151 A.2d 425
RUDOLPH ZAEHRING, DOROTHY ZAEHRING, HIS WIFE, AND GEORGE CLOVER, ARTHUR F. NAYLOR AND RUTH S. NAYLOR, PLAINTIFFS,
v.
TOWNSHIP OF LONG BEACH, IN THE COUNTY OF OCEAN, A MUNICIPAL CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided May 8, 1959.
*29 Messrs. Powell and Davis, attorneys for plaintiffs (Mr. James M. Davis, Jr., appearing).
Messrs. Berry, Whitson & Berry, attorneys for defendant (Mr. James L. Wilson, appearing).
KNIGHT, J.S.C.
This is an action in lieu of prerogative writ whereby the plaintiffs seek to have ordinance No. 58-3 of the defendant Township of Long Beach declared illegal and void as constituting "spot zoning." The ordinance under attack was adopted on February 21, 1958, and is entitled "An Ordinance Amending and Supplementing the Zoning Ordinance of Long Beach Township."
The Township of Long Beach is composed of four areas which are located on a narrow strip of land, extending from Barnegat Inlet on the north to Beach Haven Inlet on the south, known as Long Beach Island. This island is bounded by the Atlantic Ocean on the east, Barnegat Bay and Little Egg Harbor Bay on the west, and is within the territorial confines of the County of Ocean, New Jersey.
The four areas are separated from each other by other municipalities. The first area is located at the north end of the island between the southerly boundary of the Borough of Barnegat Light and the northerly boundary of the Borough of Harvey Cedars. The second area is located between the southerly boundary of the Borough of Harvey Cedars and the northerly boundary of the Borough of Surf City. The third area is located between the southerly boundary of the Borough of Ship Bottom, which is adjacent to the Borough of Surf City, and the northerly boundary of the Borough of Beach Haven. The fourth area is located at the south end of the island between the southerly boundary of the Borough of Beach Haven and Beach Haven Inlet. These *30 separate areas of the township shall hereinafter be referred to as area one, two, three and four respectively.
The Township of Long Beach is zoned by ordinance No. 55-2, as amended and supplemented, adopted May 6, 1955, which is a codification, consolidation and revision of the various zoning ordinances previously adopted by the township, including the township's original zoning ordinance of 1949.
Ordinance No. 55-2 established three types of districts in the Township of Long Beach, namely (1) Residence "A" (one-family residence), (2) Residence "B" (two-family residences) and (3) Business. The four areas of the township were zoned as follows: area one as a Residence "A" District, with the exception of a portion reserved for business uses along Long Beach Boulevard; area two as a Residence "B" District; area three as a Residence "B" District, with the exception of portions zoned as Residence "A" and Business; and area four as a Business District.
Ordinance No. 58-3, which is under attack here, established a "marine commercial district" as a fourth type of district. The buildings and uses permitted in a marine commercial district are as follows:
"(a) The buildings and uses permitted in Residence `A' and Residence `B' districts.
(b) Rooming houses, boarding houses, hotels, apartment houses and multiple family dwellings.
(c) Boat yards, marinas, marine railways, boat lifts, docks, piers, facilities for the docking, loading, servicing, repairing, storing and sale of boats; retail sale of marine supplies, equipment and provisions, including the sale of fuel and petroleum products for boats, operation of party and charter boat cruises and U-Drives; boat lockers." (Ord. No. 58-3, § I)
Under the terms of ordinance No. 58-3, 12 parcels of land were designated as "marine commercial districts." Exhibits P-9 through P-18 are maps of surveys made by the township engineer of the marine commercial districts and the area in which they are located. The maps show that the marine commercial districts are not general areas *31 or neighborhoods but are individual tracts ranging in size from under 5,000 square feet to one tract over 110,000 square feet. They are not cohesive areas with distinct physical features from the surrounding properties, but in most instances are carved away from other lots classified residential on the same block. The total area designated as marine commercial districts is but a minor portion of the residential districts. These surveys and the testimony establish that the newly created marine commercial districts include only those properties devoted to marine commercial uses which existed as nonconforming uses prior to the adoption of ordinance No. 58-3, and it is obvious from the testimony that the ordinance was passed to legalize these marine commercial uses existing in the residence zones. The need for this ordinance was brought to the attention of members of the governing body by certain litigation between the owners and operators of several of the marine commercial businesses in the residence zones. The nature of that litigation was to prevent both the expansion of nonconforming uses then existing and the establishment of new nonconforming uses. The governing body was of the opinion that all the then existing marine commercial establishments should be able to expand and improve their operations within their then existing property lines so as to take care of the increasing demand by the public for such services and to eliminate the unfair economic advantages that some owners had over others due to the extent and type of their operation when they were made nonconforming uses. In addition, they determined that no new boat yards or marinas were needed in the residence zones, because ordinance No. 55-2 was designed to permit the expansion of the marine commercial business in area four of the township which is zoned as a business district.
There is testimony that there are several undeveloped properties in residence zones, not placed in a marine commercial district, that are physically situated on the bay side of the island that could be used for a marine commercial *32 business. In addition, it is evident that there are a considerable number of developed properties which also have the physical attributes for marine commercial use. This evidence becomes highlighted by the fact that prior to the adoption of ordinance No. 58-3 the governing body had considered adopting ordinance No. 57-13, which would have created a "marine commercial district" in almost the entire bay section in area three. However, this ordinance was not adopted due to the objections raised by the residents in that area.
It should be noted that the court has made an inspection of Long Beach Township, paying particular attention to the marine commercial districts established by ordinance No. 58-3. The island is, from the court's observation, approximately 16 miles long and very narrow, being approximately one mile at its widest point and only a few blocks at its narrowest. The only street that runs from one end of the island to the other is Long Beach Boulevard, most of which is lined with commercial activities. The island is basically a summer resort and it is primarily residential in character. It is difficult to see or find any obvious pattern of zoning due to its physical makeup and general characteristics. It should also be noted that Long Beach Township has no control over the zoning ordinances in any of the five boroughs which divide the township into its four principal areas.
In setting forth the purposes of zoning, N.J.S.A. 40:55-32 requires that:
"* * * regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population."
The municipality may be divided into districts of such number and shape to carry out these purposes. N.J.S.A. 40:55-31.
*33 The essence of zoning has been declared to be the territorial division of the municipality into districts which is in keeping with the character of the lands and structures and their peculiar suitability for particular uses. Katobimar Realty Co. v. Webster, 20 N.J. 114, 123 (1955).
The requirement that zoning regulations conform to a comprehensive plan insures that unreasonable and arbitrary action resulting in discrimination in the classification of properties will not be sustained. Speakman v. Mayor and Council of Borough of North Plainfield, 8 N.J. 250 (1951); Collins v. Board of Adjustment of Margate City, 3 N.J. 200 (1949); Katobimar Realty Co. v. Webster, supra; and Bartlett v. Middletown Tp., 51 N.J. Super. 239 (App. Div. 1958). See Kozesnik v. Montgomery Tp., 24 N.J. 154, 166 (1957) for a discussion of the meaning of a "comprehensive plan."
Zoning ordinances establishing or changing the zone classification of property must be made with the purpose or effect of establishing or furthering a comprehensive zoning plan calculated to achieve one or more of the statutory objectives of zoning found in N.J.S.A. 40:55-32. The absence of either a comprehensive plan or a rational relation to one of the purposes of zoning, or both, will vitiate the ordinance. Conlon v. Board of Public Works of City of Paterson, 11 N.J. 363, 366 (1953).
"Spot zoning" is the legislative attempt by a municipality to wrench a small area of land from its environment and give it a use classification different from that of the surrounding area. Bartlett v. Middletown Tp., supra, 51 N.J. Super. at page 270; Speakman v. Mayor and Council of Borough of North Plainfield, supra; Guerriero v. Galasso, 144 Conn. 600, 136 A.2d 497 (Sup. Ct. Err. 1957). The fact that only a small area of land is classified differently from that of the surrounding area does not necessarily mean it is spot zoning and invalid. Conlon v. Board of Public Works of City of Paterson, supra; Kozesnik v. Montgomery *34 Tp., supra; and see Jones v. Zoning Board of Adjustment of Long Beach Tp., 32 N.J. Super. 397 (App. Div. 1954).
To determine whether a zoning amendment constitutes spot zoning, our courts have said:
"The test is whether the zoning change in question is made with the purpose or effect of establishing or furthering a comprehensive zoning scheme calculated to achieve the statutory objectives or whether it is `designed merely to relieve the lot of the burden of the restriction of the general regulation by reason of conditions alleged to cause such regulation to bear with particular harshness upon it.'"
Borough of Cresskill v. Borough of Dumont, 15 N.J. 238, 249 (1954); Conlon v. Board of Public Works of City of Paterson, supra, 11 N.J. at page 366.
In Kozesnik v. Montgomery Tp., supra, 24 N.J. at page 173, Mr. Chief Justice Weintraub said that "If the purpose is solely to serve the private interests of the owner, there is a perversion of power. * * *" Thus, where the zone change is designed to relieve the lot from the general restrictions of the surrounding zone for the private interests of the owner, transforming the lot into an island zone, the ordinance in effect grants "a special exception or variance from the restrictive residential regulation, thereby circumventing the board of adjustment" in violation of N.J.S.A. 40:55-30. Speakman v. Mayor and Council of Borough of North Plainfield, supra; Borough of Cresskill v. Borough of Dumont, supra; Campbell v. Borough of Hillsdale, 12 N.J. Super. 182 (App. Div. 1951); Cassinari v. City of Union City, 1 N.J. Super. 219 (App. Div. 1949).
It is recognized here that in all the marine commercial zones created, a nonconforming use had previously existed and that strictly speaking the amendatory ordinance did not give the lot owners a variance or exception for the nonconforming use itself, as N.J.S.A. 40:55-48 specifically allows its continuance. However, it cannot be said that these lot owners received no benefit from the change for quite the *35 contrary is true. Previous to the adoption of ordinance No. 58-3 nonconforming uses existed on the 12 lots in question, whereas there now exists legal marine commercial uses. The difference and benefits conferred are great. A nonconforming use can only be continued as it was at the time the zoning ordinance making it nonconforming was adopted, Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189 (1955), and may not be expanded or changed without municipal permission by means of a variance, Grundlehner v. Dangler, 29 N.J. 256 (1959). To obtain such a variance the board of adjustment and the governing body of the municipality would have to find that it would not be substantially detrimental to the public good and would not substantially impair the intent and purpose of the zone plan and zoning ordinance. N.J.S.A. 40:55-30.
The creation of legal marine commercial uses on these same lots will allow the property owner to do with his property as he wishes within the confines of the zoning ordinance. He could change or expand his use or structures thereon in a manner that may not be in conformity with the general neighborhood, Esso Standard Oil Co. v. Town of Westfield, 33 N.J. Super. 324, 329 (App. Div. 1954), and as a legal use the municipality could not prevent it without further legislation. The court recognizes that it is within the province of the municipal legislative body to decide what use or kind of uses will be allowed in a given district and that the court should not substitute its judgment therefor and will not set aside such legislative action unless shown to be arbitrary, capricious or unreasonable. Kozesnik v. Montgomery Tp., supra. However, it should be pointed out that it is not the municipal decision that marine commercial uses should be allowed in certain sections of the residential districts that is objectionable, but it is the method used to inject these uses into the residential districts that is the vice. Brundage v. Randolph Tp., 54 N.J. Super. 384 (App. Div. 1959), is not controlling here, as in that case the court sustained an island zone for bungalow colonies *36 where a "large bungalow colony" existed, indicating a tract of considerable size.
From all the evidence which has been presented the court concludes that the properties classified as marine commercial districts cannot be distinguished from the surrounding areas except on the basis of their previous use; that ordinance No. 58-3 was not passed in the public interest but was adopted to solve the economic and competitive problems of particular individuals; that the basic governing ordinance contemplated the expansion of the boating industries in area four of the township.
In the opinion of the court, ordinance No. 58-3 makes an arbitrary and capricious classification of the twelve "marine commercial districts" as opposed to the surrounding neighborhood, resulting in an unwarranted discrimination solely in favor of the nonconforming use owners. Legislation such as this has been consistently struck down by our courts. Speakman v. Mayor and Council of Borough of North Plainfield, supra.
For the foregoing reasons, ordinance No. 58-3 is declared invalid and set aside. A judgment may be submitted accordingly.