THE CITY OF EL PASO, Petitioner

v.

GENE DONOHUE, TRUSTEE, ET AL., Respondents

No. A-8378.   Decided January 3, 1962
Rehearing Denied January 21, 1962
352 S.W. 2d 713

*Travis White,* City Attorney, El Paso, *Robert J. Galvan* and *John C. Ross, Jr.,* Assistants City Attorney, El Paso, for petitioner.

*Kemp, Smith, Brown, Goggin & White, Joseph J. Rey,* El Paso, for respondents.

ASSOCIATE JUSTICE ROBERT W. HAMILTON delivered the opinion of the Court.

The respondents, Gene Donohue, Trustee, et al., applied to the City Planning Commission of El Paso to have Lots 13 to 32 in Block 30, Woodlawn Addition to the City of El Paso, rezoned from A-3, which is restricted to residences and apartments, to C-4, which provides for commercial construction. The City Planning Commission denied the rezoning application. Respondents appealed to the City Council of El Paso. The City Council denied the application. Respondents then brought suit in the District Court of El Paso County to have the ordinance declared invalid as to respondents' property. That court held that the action of the City in refusing the application was arbitrary and unreasonable, and entered judgment decreeing that the zoning ordinance in so far as it applies to respondents' property in Block 30, Woodlawn Addition to the City of El Paso, El Paso County, is unreasonable, arbitrary and void. From this judgment the City of El Paso prosecuted its appeal to the Court of Civil Appeals, which court affirmed the judgment of the trial court. 344 S.W. 2d 185. The City of El Paso perfected its appeal to this court.

The question before this court is whether under the record in this case there were any issuable facts or conditions which would authorize the City Council of El Paso to exercise its discretion in determining whether or not respondents' property should be rezoned from residential and apartments to business. The trial court and the Court of Civil Appeals have held that the City Council had no discretion in the matter, and held as a matter of law that the ordinance was invalid as to respondents' property. We do not agree with these holdings.

The respondents contend that the property in question under its present zoning, that is, for residences and apartments only, is unsuitable for such purposes, and that under such zoning restriction the property has little or no practical value, which amounts to a confiscation of the property. In support of these contentions the respondents rely on the testimony of a number of real estate and mortgage loan company men.

The real estate men testified in effect that the property is unsuitable for such purposes because of the following conditions and circumstances: Block 30, in which the property in question is located, adjoins Paisano Drive; Paisano Drive is a six-lane, divided thoroughfare which is designed to carry fast traffic, and the speed limit on said drive is forty-five miles per hour for approximately a mile east and a mile west of Block 30; a drainage ditch located some one hundred feet to the southwest of the property at times gives off unpleasant odors; the city sewage disposal plant, which gives off unpleasant odors, is some seven or eight blocks southeast; a baseball park and Washington Park, which has various recreational and amusement facilities, are located nearby; the Cordova Bridge across the Rio Grande into Mexico is some eight or nine blocks south. There are also some five or six non-conforming small businesses located within the area. Directly to the west of Block 30 and across a street is a gasoline filling station and truck stop which is zoned commercial. Some several blocks to the east on Paisano Drive is located the City Coliseum, where various forms of entertainment, including rodeos, from time to time are held.

In the opinion of the real estate witnesses the large volume of traffic which Paisano carried and the speed at which the traffic was allowed to move, the unpleasant odors from the city sewage disposal plant and the drainage ditch, as well as the large crowds gathering at the coliseum and the baseball park, made the area undesirable for residential purposes. They testified that the market value of 25-foot lots in Block 30 was from

$500.00 to $750.00 under the present zoning, that if said property were commercially zoned it would be worth from $2500 to $5000 per lot. The mortgage and loan company people testified that the area was unsuitable for individual residences and apartments, and that they would not recommend that loans be made for building under the present zoning.

The city contends that the area is suitable for the purposes for which it is presently zoned and that the zoning of the property in Block 30 for commercial purposes would be detrimental to the residents of the area in question. The city further contends that the zoning of property on Paisano as commercial would cause traffic congestion and would defeat the purpose for which Paisano was built, that is, to facilitate the movement of traffic into the downtown section and out of the downtown section, as well as traffic through the city.

In addition to several witnesses who were residents living near Block 30 testifying that they objected to the rezoning of Block 30 because it would be detrimental to their homes, the city used one witness who had been a member of the City Planning Commission for ten years and was at the time of testifying its chairman. Another witness used was the Director of Planning of the City of El Paso. He had been executive secretary of Walla Walla, Washington, Planning Commission from 1947 to 1952, was a Director of Planning of Spokane County, Washington, from 1952 to 1957, was Planning Director of the Puget Sound Governmental Conference in 1957, and was consultant to a number of cities and to legislative committees of the State of Oregon. The City also used a city building official who had had several years' experience in engineering and design field supervision.

The Chairman of the Planning Commission testified that Paisano Drive was built about ten years previously at a cost of several million dollars for the purpose of relieving traffic on Alameda Street, which carried U. S. Highway 80 traffic, and was designed to move the traffic rapidly through the city; that to zone property on Paisano as commercial would lead to congestion of traffic and defeat the purpose for which Paisano Drive was built at such a tremendous cost. He testified that he had made a study of zoning problems in El Paso for ten years, that the area in question is properly zoned as residential, and that it is suitable for such purposes; that it was imperative to maintain Paisano Drive for fast moving traffic and that it was a policy of the Planning Commission to recommend that it be so

maintained at least until an expressway is provided through the city.

The director of city planning testified that the plan and purpose of the city in building Paisano Drive was for a major traffic carrying facility, and that purpose has been accomplished reasonably well. It was his opinion that the area in question was zoned suitably, that it was a growing residential section, that many new houses were being built in the area and in fact at the time of trial plans were being made for the building of a new school at a location several blocks southeast of the respondents' property to take care of the growing needs of the children of school age; that individual residences were located on the property across Paisano Drive to the north, to the south across Central Avenue from Block 30 were a number of residences. On the very property which is sought to be rezoned are a number of residences which are occupied and have been for many years. Across Hammett Drive to the east is a housing project composed of some forty apartment buildings occupied by some three hundred families, with a total of approximately eleven hundred occupants; that in addition to the new school being planned there are two schools a short distance east, one a high school and the other an elementary school. Washington Park is available for recreation for children in the area. It was his opinion that to serve the best interests of the people living in the area and the welfare of the public in general the zoning should be maintained for residences and for apartments.

The city building official testified that the area was suitable for residences and apartments. He said the area was composed of residents of low income and modest homes, that similar areas have been able to get financing for new buildings.

The Executive Director of the Housing Authority which operates the project just east of respondents' property and the Sherman project farther east on Paisano, testified that he had been engaged in that type of work for seven years and that he was familiar with the area, that he appeared before the Planning Commission and the City Council protesting any change in the zoning of the lots in Block 30 from A-3 apartments and multiple residential and dwellings to C-4 commercial; that he was representing the Board of Directors of the housing authority which opposed such rezoning; that these housing authority projects were located in this area because it was a residential area and it was desired that it be kept that way. He testified that the zoning which the area had was suitable and that the granting of

this application for rezoning of the property in Block 30 would be detrimental to the neighborhood. He testified that in his opinion the area was suitable for privately owned apartments; it is close to town, close to schools, and has many advantages for residential purposes for low income families.

The Court of Civil Appeals in reaching its decision in this case necessarily had to disregard the testimony of the witnesses for the City of El Paso. The opinion states:

"There was no contradicting testimony by other real estate or mortgage company experts—only the testimony of the City representatives as outlined above. This does not, we think, present a situation where reasonable minds could or should differ, but presents, rather, a situation where the experts in the field say one thing and three City representatives another."

No authority is cited supporting the proposition that only real estate and mortgage company experts are qualified to testify about matters affecting the validity of a zoning ordinance, and we know of none. The governing body of a city, in discharging its legislative functions with regard to city planning and zoning, is entitled to consider all the facts and circumstances which may affect the property and occupants of the area involved, as well as the general welfare of the people of the city as a whole, and is entitled to consider the opinions of experts in the field of city planning as well as the opinions of real estate and mortgage company experts. It follows, that in determining whether or not a governing body of a city has abused its discretion in the exercise of its legislative functions dealing with city planning and zoning, the courts are not limited to the testimony of real estate and loan company experts.

In City of Waxahachie v. Watkins, 154 Texas 206, 275 S.W. 2d 477, at page 480, this court said:

"'* * * And the 'extraordinary burden' rests on one attacking the ordinance 'to show that no *conclusive,* or even *controversial* or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it.'"

To uphold the position of the respondents in this case we must hold that there were no controversial or issuable facts or conditions existing which would authorize the City Council of El Paso to exercise a discretion in determining whether or not

respondent's application for rezoning should be granted. We must say as a matter of law that the property in question is unsuitable for residential purposes and is in fact business property. This we cannot say when we consider all of the testimony in the record before us.

Probably the case most directly in point with the instant case is the City of Dallas v. Lively, 161 S.W. 2d 895, (Texas Civ. App.) error refused. There the property was bounded by two heavily traveled highways. The adjacent property on one side was an old residence abandoned and uninhabitable. Across the street was a Magnolia service station. The property was valued from nothing to $1500 as residential property, but by rezoning for a filling station it would be worth $12,500 to $15,000. There was evidence that it was unfit for residential purposes on account of the traffic on the two highways. The question of confiscation was raised. The district court in that case held the zoning void, as did the district court in the instant case. The Court of Civil Appeals in the Lively case, however, reversed and rendered on the ground that the plaintiffs had not carried their "extraordinary burden" of showing that reasonable minds could not differ under the facts of the situation. See also the case of Edge v. City of Bellaire, 200 S.W. 2d 224, (Texas Civ. App.) error refused.

■ Respondents argue in effect that since the property in question would be much more valuable commercially zoned, the failure of the city to rezone amounts to a confiscation of respondents' property. In support of this argument they cite the case of City of West University Place v. Ellis, 134 Texas 222, 134 S.W. 2d 1038. That case involved the zoning of a 50-foot lot as residential, when at the time it was actually in the business district. The lot faced on a main thoroughfare of the city and had a beauty parlor located on one side of it and a liquor store on the other. The court held that where the zoning of a business lot as residential results in destroying its value, such action amounts to confiscation. In the instant case the property in question was in a residential area when first zoned as residential and the area is still predominantly residential, with residential property on three sides and even with residences on some of the property itself. Furthermore, there was evidence that this property has substantial value under the present zoning. The evidence, however, was uncontroverted that it would be much more valuable if changed from residential to commercial zoning. This in itself does not amount to confiscation. The argument made here was rejected in Dallas v. Lively, supra.

We reverse the judgment of the Court of Civil Appeals and of the district court and render judgment that respondents Gene Donohue, Trustee, et al. take nothing.

Opinion delivered January 3, 1962.