89 N.J. Super. 460 (1965)
215 A.2d 382
P.D.M. CONSTRUCTION CORPORATION, A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
HUGH W. WELSH, ACTING BUILDING INSPECTOR OF THE TOWN OF BELLEVILLE AND THE BOARD OF ADJUSTMENT OF THE TOWN OF BELLEVILLE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Argued and Decided November 5, 1965.
Mr. Ralph G. Mesce for plaintiff.
Mr. Jack J. Soriano for defendant, Hugh W. Welsh.
Mr. Charles B. Tedesco for defendant Board of Adjustment.
*461 FUSCO, J.S.C.
In this proceeding in lieu of prerogative writs, plaintiff P.D.M. Construction Corporation, a landowner, seeks a writ of mandamus directing the acting building inspector of the Town of Belleville to issue a building permit to erect a nursing home to accommodate approximately 39 patients on premises located in the C residence zone or, in the alternative, to review the action of the local board of adjustment in denying its application for a variance from the zoning ordinance.
The premises in question are known as 9-11 Forest Avenue and consist of a tract of now vacant land having an area of approximately 12,000 square feet, irregularly rectangular in shape. It has a frontage on Forest Avenue of 60 feet and on Highland Avenue of 56 feet 8 inches, and is approximately 200 feet in depth.
On May 5, 1965 plaintiff applied to the building inspector for a building permit, which permit was denied by letter of the same date on the ground that section 2 of the zoning ordinance did not permit nursing homes in a C residence zone or, for that matter, in any part of Belleville. On May 7 plaintiff appealed to the board of adjustment for an order reversing this decision or, in the alternative, for a variance from the provisions of section 2. The board of adjustment conducted a hearing on June 8 and thereafter, by resolution denying the relief prayed, declared that the construction of a nursing home is in violation of section 2 and, further, that a variance from the provisions of said ordinance should not issue for the following reasons:
"(a) Insufficient parking facilities will be provided for employees and/or visitors at the proposed site;
(b) Proposed construction radically changes the neighborhood which is generally composed of one-family and two-family residences; and
(c) Due to the square type construction proposed for the building, no allowance has been made for side yards or a front yard sufficient for outdoor, on-the-premise, ambulation of convalescent patients."
The zoning ordinance indicates that this tract lies within a residence zone. Although the board of adjustment concluded *462 that the neighborhood is generally composed of one-family and two-family residences, the zone is not restricted to such uses.
Section 2 of the zoning ordinance provides as follows:
"Section 2. In a residence zone, no building or premises shall be used and no building shall be erected or altered which is arranged, intended or designed to be used, except for one or more of the following uses:
1. Dwellings or tenements, including the office of a physician, surgeon, dentist, lawyer, dressmaker, artist, or musician when situated in the same dwelling or apartment used by such physician, surgeon, dentist, lawyer, dressmaker, artist or musician as his private dwelling.
2. Boarding houses, including residences which are used for the purpose of daytime boarding of the type commonly called, `child day care,' not to exceed five children.
3. Hotels.
4. Churches.
5. Schools, public libraries or public museums.
6. Clubs except the chief activity of which is a service carried on as a business.
7. Philanthropic or eleemosynary uses or institutions other than correctional institutions, or asylums for the insane.
8. Railroad passenger stations.
9. Parks and playgrounds.
10. Farming, truck gardening, nurseries or greenhouses.
11. Accessory uses customarily incident to the above uses.
12. In `A' residence zones, one dwelling for one-family or one housekeeping unit only. In `B' residence zones, in addition to the uses permitted in `A' residence zones a dwelling detached or semi-detached for not more than two families or two housekeeping units."
It is plaintiff's contention that since section 2 permits "boarding houses" and "hotels" in the C residence zone it must, perforce, also authorize the operation of a nursing home since, in reality, a nursing home is nothing more than a "boarding house" or "hotel" for elderly or debilitated persons.
It is the contention of defendant board of adjustment that the building inspector acted correctly in denying the building permit because the zoning ordinance does not allow for the operation of privately run nursing homes, and it relies on Pierro v. Baxendale, 20 N.J. 17 (1955), in which it was stated:
*463 "* * * It must always be remembered that the duty of selecting particular uses which are congruous in residential zones was vested by the Legislature in the municipal officials rather than in the courts. Once the selections were made and duly embodied in the comprehensive zoning ordinance of 1939 they became presumptively valid and they are not to be nullified except upon an affirmative showing that the action taken by the municipal officials was unreasonable, arbitrary and capricious. * * *" (at page 26)
It is also argued that nursing homes are stringently regulated by the State and that eleemosynary institutions are free from taxation.
Plaintiff also contends that if section 2 does not authorize the operation of a nursing home anywhere in Belleville, then the ordinance provision is unconstitutional in that it denies the applicant the equal protection of the law, especially since it is undisputed that if plaintiff were a nonprofit corporation, to wit, an eleemosynary institution, the operation of a nursing home would be authorized by section 2, paragraph 7 of said zoning ordinance. Counsel also argues that the spirit of the law should be one of encouragement of private enterprise, instead of discouragement.
Although it has been stated that it is within the province of the municipal legislative body to decide what use or kind of uses will be allowed in any given district, Zaehring v. Long Beach Township, 56 N.J. Super. 26 (Law Div. 1959), and that there is no obligation upon a municipality to provide for every use within its borders, Vickers v. Township Committee of Gloucester Township, 37 N.J. 232 (1962), certiorari denied and appeal dismissed, 371 U.S. 233, 83 S.Ct. 326, 9 L.Ed.2d 495 (1962), it was early established that there is no power in a municipality to limit or regulate the use to which property may be put unless such limitation is designed to promote the general health, safety and welfare. Spur Distributing Co. v. City Council of City of Bridgeton, 122 N.J.L. 460 (Sup. Ct. 1939).
The issue in the case before me, then, is: Does the zoning ordinance authorize the construction and operation of privately owned nursing homes? The Pierro case, supra, cited *464 by the town and building inspector, is of no help on this issue because in that case the zoning ordinance, while allowing boarding and rooming houses in residential zones, specifically prohibited hotels and motels. The holding of the court was simply that such a specified prohibition was not necessarily invalid in light of the town's surrounding circumstances. Indeed, it is interesting to note that in Pierro Justices Heher, Oliphant and Burling dissented on the ground that a zoning ordinance which allows boarding and rooming houses but prohibits motels and hotels does not present a "distinction of substance reasonably related to any of the constitutional and statutory considerations to be served by zoning [and thus] the classification is illusive and unreal."
The fact that the State regulates nursing homes is not in issue or controlling, nor is the fact that eleemosynary institutions are free from taxes.
It would seem unquestionable that the creation of a nursing home, whether or not influenced by a profit motive, promotes the general welfare. A zoning ordinance which entirely prohibits the operation of such homes except when the owner is motivated by a philanthropic or eleemosynary motive, is highly questionable and may justifiably be open to attack on constitutional grounds as denying equal protection of the law to plaintiff.
Although section 2 of the zoning ordinance does not mention nursing homes as one of the authorized uses for buildings in the C residence zone, it does authorize the erection of "boarding houses" and "hotels" and "eleemosynary institutions." The action of the building inspector cannot be criticized, since nursing homes are not specifically included in the zoning ordinance.
The question of whether a nursing home is encompassed within the meaning of "boarding house" and "hotels" has not been determined by the courts of this State but it has been passed upon by courts of other states on several occasions and in several different contexts, including that of a zoning ordinance.
*465 In Chang v. Magbee, 45 Haw. 454, 370 P.2d 479, 94 A.L.R.2d 724 (1962), the Supreme Court of Hawaii held that a convalescent home, accommodating 26 to 35 people in need of nursing care, was a boarding house within the meaning of a restrictive covenant in a deed for lots within a private subdivision.
In Shegda v. Village of Lancaster, 192 Misc. 560, 80 N.Y.S.2d 517 (Sup. Ct. 1948), plaintiffs sought a declaratory judgment establishing their right to build a nursing home in a zone A or residence district under a zoning ordinance which provided as follows:

"Section 4, zone A or residence district.
(A) In the subdivision of the Village of Lancaster known as and designated as zone `A' or residence district, no building shall be erected, constructed, altered or used for any purpose other than that of one- or two-family dwelling houses or multiple or apartment houses, and hotels, rooming or boarding houses, churches, schools, clubhouses and private garages, greenhouses, nurseries, or other building accessory to such private dwelling."
Frankly, a reading of this section, although embodied in one paragraph, would apparently indicate that section 2 of the present zoning ordinance was taken from it.
The New York court held that plaintiffs were entitled to declaratory relief since the authorization to construct hotels and boarding houses must necessarily encompass the building and operation of nursing homes. The court said that in cases of this nature, whether there is a violation of a zoning ordinance depends on the wording, scope and intent of the particular ordinance and the proposed use of the premises by the individual owner.
I am impressed with the similarity between the Belleville zoning ordinance and the zoning ordinance in Shegda. However, I am even more impressed with the reasoning behind such a determination. It seems to me that the purposes for establishing a nursing home are the same as the purposes for establishing a boarding house and hotel. They both provide lodging and meals for compensation. They both require extra *466 public services. They both present similar traffic and parking problems and they both appeal to transient guests. The mere fact that nurses may be regularly on duty in a nursing home does not take it out of the category of boarding house or hotel, since any boarder in a boarding house or patron in a hotel could provide for the services of a nurse while staying at a boarding house or hotel, if he or she so desired.
It is my judgment that there could be no reasonable basis for allowing hotels and boarding houses and eleemosynary institutions and not allowing private nursing homes in a C residence zone of Belleville.
My holding, then, is that the operation of a privately owned nursing home is authorized in a C residence zone under those portions of section 2 which authorize the construction of "boarding houses, hotels, and eleemosynary institutions." However, whether this court can direct the building inspector to issue a building permit depends on whether the erection of this building is in compliance with other provisions of the zoning ordinance, the town building code and any statutory regulations which may be applicable to "nursing homes."
I will therefore remand the matter to the building inspector for a determination of such issues, and if the application for the construction of the building is in conformance with these regulations, then the building permit should be issued.
Of course, since my opinion is that the operation of the nursing home is authorized in a C residence zone by section 2 of the Belleville zoning ordinance, notwithstanding the motivation of the owner, the constitutional issues posed by plaintiff need not be answered at this time.