**The CITY OF SAN ANTONIO, Appellant,**

v.

**Mrs. Kent N. HUNT, Appellee.**

**No. 14892.**

Court of Civil Appeals of Texas, San Antonio.

July 22, 1970.

As Modified on Denial of Rehearing Oct. 14, 1970.

Howard C. Walker, Kampmann, Kampmann, Church & Burns, San Antonio, for appellant.

W. R. Smith, San Antonio, for appellee.

KLINGEMAN, Justice.

This is an appeal from a judgment of the trial court holding The City of San Antonio's Ordinance No. 33259, amending the City's Comprehensive Zoning Ordinance by rezoning and reclassifying Lots 1 and 2, Block 8, New City Block 3264, from "A—Single Family Dwellings" to "D—Apartments," to be null and void, and permanently enjoining the City from granting any permit for the construction on said lots of any structure or permit for any use of said land other than as allowed under the Comprehensive Zoning Ordinance of said City within the areas therein classified "A—Single Family Dwellings."

The subject property is two vacant lots located at the intersection of San Pedro Avenue and West Summit Street. Plaintiff, Mrs. Kent N. Hunt, owns a home in the immediate vicinity of such property, her property being located at 321 West Summit Street, in the middle of the block, across the street from the property sought to be rezoned. In 1938, the City of San Antonio enacted a Comprehensive Zoning Ordinance in which ordinance both blocks were classified as "A—Single Family Dwellings."

In 1959, a group of doctors applied for a special exception to the Comprehensive Zoning Ordinance for a parking lot for

non-commercial parking of vehicles on the lots here involved, which was granted by the City, but this order was declared null and void by the District Court of Bexar County on December 29, 1959. In January of 1965, Dr. Henry N. Leopold and Dr. James R. O'Neill made an application to the City to reclassify the two lots from "A—Residence District" to "D—Apartment," and on May 6, 1965, the City Council after a hearing passed Ordinance No. 33259 so reclassifying such lots.

■■■ There are certain legal principles which guide us in passing on the validity of the ordinance here in question. A city ordinance is presumed to be valid, and this presumption applies to amendatory zoning ordinances as well as original comprehensive zoning ordinances. In either case, the courts have no authority to interfere unless the change is clearly unreasonable and arbitrary, and they will not interfere unless it appears that the ordinance represents a clear abuse of municipal discretion. If reasonable minds may differ as to whether or not a particular zoning ordinance has a substantial relationship to the public health, safety, morals or general welfare, no clear abuse of discretion is shown and the ordinance must stand as a valid exercise of the city's police power. If the issue of validity is fairly debatable, the courts will not interfere. An "extraordinary burden" rests on one attacking the ordinance to show that no conclusive or even controversial or issuable facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it. This query presents a question of law, not a question of fact. If there is an issuable fact as to whether the ordinance makes for the good of the community, the fact that it may be detrimental to some private interests is not material. City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477 (1955); City of El Paso v. Donohue, 163 Tex. 160, 352 S.W.2d 713 (1962); Baccus v. City of Dallas, 450 S.W.2d 389 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.) 454 S.W.2d 391 (Tex.Sup.

1970); City of Lubbock v. Whitacre, 414 S.W.2d 497 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.); City of Corpus Christi v. Jones, 144 S.W.2d 388 (Tex.Civ.App.—San Antonio 1940, writ dism'd, correct judgmt.).

The question before this Court is whether under the record there was any issuable fact or conditions which would authorize the City Council to exercise its discretion in the manner here complained of. In making our determination thereof, the question is not whether the City Council actually heard sufficient evidence to support its order, but whether there existed sufficient facts to justify the entry thereof. If, under the entire record, there were issuable facts which tend to establish that the City Council did not abuse its discretion in rezoning the property here involved, its action must stand as a valid exercise of its police power.

■■■ The rezoning of the property here involved was recommended for approval by the City Planning Commission. There was testimony before the City Council as reflected by the minutes of the council meeting at which the amendatory ordinance was enacted, which minutes were introduced in evidence, that the structure to be erected on the lots here involved would be in keeping with the entire neighborhood, would have adequate off-street parking, and would not create any traffic hazard. It was stipulated in the trial that in connection with the hearing before the City Council on May 6, 1965, when the amendatory ordinance was enacted, notices thereof were sent to all neighbors, with seven being returned in favor of the proposed zoning change and none in opposition; and that at a previous hearing several months earlier, fifteen notices were sent out to neighbors, with five of such notices being returned in favor of the zoning change and three against; and that such notices were still in the City's file and were carried over to the May 6, 1965, hearing.

Plaintiff was the only witness in the trial court. She testified that the area involved

is a residential area and has been for many years; that some homes have been built in this area in recent years; that reclassifying such property would cause parking problems, in particular in front of her home. She also testified that there is a doctors' clinic situated at the northwest corner of San Pedro Avenue and Summit Street, and that since 1959 a parking lot has been constructed adjacent to the doctors' clinic, which property is "catty-cornered" from the lots here involved; that there is a parking lot for the Laurel Theater in the block immediately south of and on the same side of the street as the property sought to be rezoned; that Mark Twain Junior High School is immediately to the west of the subject property, and that there has been an increased enrollment in such school. She further testified that San Pedro Avenue has been widened to four lanes, and that the traffic on San Pedro Avenue is substantially heavier than in 1959.[1] A map of the area introduced in evidence shows all property to the west of the subject property to be zoned "D—Apartments." Other adjacent areas are zoned "F—Local Retail." It appears from such map and the testimony that in this immediate area there are parking lots, apartments, stores, a theater, a doctors' clinic, other commercial properties, and numerous garage apartments, including garage apartments in the block where the subject property is located and in the block where plaintiff resides.

Plaintiff relies heavily on Weaver v. Ham, 149 Tex. 309, 232 S.W.2d 704 (1950). There is little analogy to the facts in that case and those in this case. In Weaver, the City Council had rezoned a lot 150 feet by 300 feet, comprising approximately one-fifth of the area of the block completely surrounded by single family residences and a substantial distance from any commercial uses. In the case before us, blocks immediately to the south and west of the subject property are zoned "F—Local Retail" and "D—Apartments," and there are various commercial properties in the immediate area, including a theater, parking lots, a medical clinic, and apartments. We do not regard Weaver as applicable.

Under the record before us and the authorities hereinbefore cited, we hold that the plaintiff failed to meet the "extraordinary burden" required of her of showing that no controversial or issuable facts or conditions existed which would authorize the city council to exercise its discretion in rezoning the subject property in the manner here complained of, and that the trial court erred in holding the ordinance in question null and void.

We reverse the judgment of the trial court and render judgment that plaintiff take nothing.

CADENA, Justice (dissenting).

In my opinion, to uphold the zoning amendment in this case it is necessary to ignore basic concepts of zoning law and to approve a practice which is the very antithesis of municipal planning.

While it is accepted judicial dogma that the enactment of a municipal zoning ordinance is an exercise of the police power, in Texas, as in most other states, municipalities derive their power to adopt zoning regulations exclusively from the zoning enabling statutes, Articles 1011a et seq., Tex. Rev.Civ.Stat.Ann. Spann v. City of Dallas, 111 Tex. 350, 235 S.W. 513 (1921). In passing zoning ordinances, cities are confined to the express authority delegated to them by the enabling act. Swain v. Board of Adjustment of City of University Park, 433 S.W.2d 727, 731 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.).

1. In Clesi v. Northwest Dallas Improvement Association, Tex.Civ.App., 263 S.W. 2d 820, writ ref'd n. r. e., the Court said: "But aside from all other considerations, only those familiar with Inwood Road since its widening in 1952 can envisage the tremendously increased volume of traffic that has ensued; evidencing without more, such a change of conditions as to constitute a reasonable basis for the rezoning under attack."

In considering the validity of zoning regulations, our courts generally stress that such regulations must have as their purpose the promotion of the health, morals, safety and general welfare of the community. This limitation of permissible purposes is found in Article 1011a. However, another important limitation is imposed by the requirement, found in Article 1011c, that the "regulations shall be made in accordance with a comprehensive plan * * *." No zoning regulation, then, whatever its relation to the public health, welfare, morals and safety, is authorized by the enabling act unless it is in accordance with the comprehensive plan.

Comprehensive zoning implies the establishment of districts grouping the various phases of the communal activity, segregating industry, business and residences so that the whole is not mixed together. Such zoning insures that property values and living conditions become reasonably predictable. But when little pieces are chipped away here and there the result is a hodgepodge of unrelated uses. It strains credulity to label this as zoning in accordance with a comprehensive plan.

The applicants for the zoning change are a group of doctors to build a clinic on two lots situated at the southeast corner of San Pedro Avenue and Summit Avenue in N.C.B. 3264. N.C.B. 3264 is bordered on the north by Summit Avenue, on the east by Belknap Street, on the south by Agarita Street, and on the west by San Pedro Avenue, a major thoroughfare. All of N.C.B. 3264 is in Zone A, and the undisputed evidence shows that all of the buildings in the block are being used for single family residential purposes. Immediately to the north of N.C.B. 3264 lie N.C.B. 3263 and N.C.B. 3262, both of which are governed by zoning regulations limiting the property to single family residential use. The only deviant use in the A district is an apartment house in N.C.B. 3263, directly across Summit Avenue from the subject property, which exists by virtue of its nonconforming use

status. The blocks east of N.C.B. 3264 are also zoned A.

Directly to the south of N.C.B. 3264 is N.C.B. 3058, which is in an A zone, except for a strip along San Pedro Avenue, which is zoned F and is used as a parking lot for the patrons of a suburban theater. The subject property is separated from this parking lot by a tier of residential lots in N.C.B. 3264.

The residential areas east of San Pedro are the sites of old but well-kept single-family residences which are immediately sold when offered for sale.

Directly west of N.C.B. 3264, on the west side of San Pedro is N.C.B. 1797, which is zoned D Apartment. This block is used as a playground for a junior high school which is located directly to the south of the playground, in N.C.B. 1798. Agarita Street is not open to traffic west of San Pedro, so that the school and its playground are, for all practical purposes, one tract of land. The two blocks to the north of the school playground, on the west side of San Pedro (northwest of N.C.B. 3264 and the subject property), are also zoned D Apartment.

In an A district, the only permitted uses are one-family dwellings and accessory buildings, including garages and servants' quarters, public parks or playgrounds, and schools and colleges. In a D Apartment district, the permitted uses include one-family dwellings; two-family dwellings; farming, truck gardening, nurseries and greenhouses; water supply reservoirs, water towers and artesian wells; boarding and lodging houses; child and day care nurseries (limited to 20 children); hospitals and clinics, those for the treatment of tuberculars, alcoholics, narcotic addicts, and insane or feeble-minded persons; hotels; institutions of a philanthropic character "other than female or correctional institutions"; libraries and museums; multiple dwellings, apartment houses or group houses, not including tourist courts, trailer camps or lodges; physical therapists; pri-

vate clubs; fraternity and sorority houses; home occupations, including professional offices of physicians, surgeons, dentists, optometrists, naturopaths, chiropractors, osteopaths, musicians, artists, insurance agencies, attorneys, accountants, bookkeepers, architects, engineers, seamstresses, brokers and telephone secretarial services; and accessory buildings.

N.C.B. 3264, according to the undisputed evidence, is the western edge of a single-family residential district which has maintained its integrity as such, including the blocks to the north and east. It is also the southern edge of such residential district. The property across San Pedro, to the west of N.C.B. 3264, has developed strictly in accordance with its D Apartment zoning. The junior high school and its playground, in fact, would be permissible in an A district, so that the actual use of the property across San Pedro from N.C.B. 3264 and the subject property is an A use.

It is not true, as the majority opinion indicates, that land adjacent to the subject property is zoned F Local Retail. The commercial district to the south is one-half block away from the subject property and is used as a theater parking lot described by the City's attorney as a parking lot "that is never anywhere near full."

The plat introduced into evidence shows the presence of several garage apartments in the A district. The basic zoning ordinance permits accessory buildings for use as servants' quarters, and there is nothing in the record to show that they are being used for any other purpose. In fact, as already pointed out, except for the lawful nonconforming apartment house, all property in the A district is being used for purposes permitted in such district.

What are the changes in conditions on which the majority opinion relies to uphold the intrusion of D Apartment zoning (which would permit boarding houses, lodging houses, hotels and "private clubs" serving beer and liquor) into the single-family residential area? There is a doctors' clinic on the northwest corner of San Pedro and Summit, diagonally (northwest) from N.C.B. 3264. This is a permissible use in a D Apartment district. The school and playground directly across San Pedro from N.C.B. 3264 represent a use permissible even in a single-family residential district. The "parking lots, apartments, stores, a theater, a doctors' clinic, other commercial properties" discussed in the majority opinion are all located on land bearing a zoning classification permitting such uses. Except for the theater parking lot, the nearest commercial property is west of San Pedro, one and one-half blocks from the subject property. All of these so-called "changed conditions" consist of the orderly development of property in accordance with its zoning classification. To suggest that development of urban property in accordance with the comprehensive zoning plan represents a "change in conditions" justifying a rezoning is to advance a theory of planning and zoning which is, to say the least, novel.

The only conditions which, under this record, have changed since the enactment of the zoning ordinance are found in the fact that attendance at the junior high school has increased, and that traffic on San Pedro Avenue has increased. The reference to the "substantially heavier" traffic on San Pedro, relied on by the majority opinion, rests on the following testimony: "Q. Isn't it a fact that traffic became considerably heavier on San Pedro as of 1965, than it was, say, as of 1959? A. Well, relatively speaking, yes." There is no evidence that, as in Clesi v. Northwest Dallas Ins. Ass'n, 263 S.W.2d 820, 828 (Tex.Civ.App.—Dallas 1953, writ ref'd n. r. e.), the traffic on San Pedro had "tremendously increased." It is significant that in Clesi the Dallas court, in stating that the "tremendously increased volume of traffic" is sufficient to evidence "without more, such a change of conditions as to constitute a reasonable basis for the rezoning under attack," cited no authority in support of its conclusion. The desirable rule, I believe, is that announced by the Oregon Court in Page v. Portland, 178 Or. 632, 165

P.2d 280: "If residential districts can be changed merely on account of increased traffic, there would be no certainty or stability of zoning. We conclude that this evidence in itself affords no reasonable ground for enactment of the zoning ordinance."

The majority opinion, after announcing, "The question is not whether the City Council actually heard sufficient evidence to support its order, but whether there existed sufficient evidence to justify the entry thereof," proceeds to refer to the minutes of the council meeting at which the ordinance was adopted in order to point to evidence, which was not introduced in the trial court, to the effect that "the structure to be erected on the lots here involved would be in keeping with the entire neighborhood, would have adequate off-street parking, and would not create any traffic hazard." We are not concerned with the appearance of buildings. Our concern is with use of land. An architecturally beautiful rowdy tavern in a single-family residential area is at least as objectionable as an ugly filling station. Our concern is with the incompatibility of uses. It might also be pointed out that there is no evidence of any guarantee that the promised architectural beauty will become a reality. More importantly, if the change of zoning is valid, there is no guarantee that the land will be used for a clinic. The landowner, under the law, will have the right to put the land to any use permitted in a D district.

Actually, the reference to the minutes of the meeting at which the ordinance was adopted merely serves to illustrate the thorough lack of relationship between the rezoning and the comprehensive plan. (1) The City Council gave consideration only to the rezoning of the two lots in question, without reference to the needs of the neighborhood or surrounding area, nor was any consideration given to the possible rezoning of the entire area, in view of the so-called "change in conditions." See Zaehring v. Township of Long Beach, 56 N.J.Super. 26, 151 A.2d 425 (1959); D'Angelo v. Knights

of Columbus, Bldg. Ass'n, 89 R.I. 76, 151 A.2d 495 (1959). (2) The Council heard testimony concerning only the specific use proposed to be made of the land by the applicant without considering the other uses which would be permissible in the lower classification. (3) The rezoned property is indistinguishable from surrounding property which still remains subject to the more restrictive A classification.

Under the basic zoning ordinance, commercial zoning extended along the east side of San Pedro Avenue to a point one-half block south of the subject property. From that point on, northward, the land was zoned A, as was land to the east. This residential area was separated from uses permissible in an apartment district by San Pedro Avenue, a natural buffer. It is patent that rezoning the two lots in question is in no way consistent with the plan revealed by the existing classifications. The fact that property across San Pedro is classified D Apartment cannot justify the rezoning of the subject property. To hold otherwise would compel the conclusion that the rezoning of the subject property would require rezoning the adjacent lots and the lots across the street, resulting in the complete destruction of the single-family residential area. If the fact that one district is contiguous or near to a less restricted district justifies the rezoning of the more restricted area, then control of land use through zoning is a pipe dream.

While it cannot be doubted that the City Council had the power to amend the basic zoning ordinance, the amendment must be drawn within the limits prescribed by the enabling statute. It must either conform to the comprehensive plan that is in existence at the time the amendment is adopted, or, in combination with such existing plan, the amendment must constitute a new comprehensive plan. It cannot be said, even with tongue in cheek, that the rezoning of the two lots in question represents any plan whatever, unless that plan be to destroy the existing plan for the benefit of the owners of the subject prop-

erty. No one, not even the City, has suggested how the rezoning of the two lots will even tend to promote the general health, safety, morals or welfare. No attempt has been made to show how the retention of the A zoning presents any threat, however conjectural, to health, safety, morals or welfare.

Instead of zoning in accordance with a comprehensive plan, the record here reveals nothing more than a piecemeal tearing away of the protections offered by the basic zoning ordinance. Instead of legislation for the protection of the public, we have here legislation intended to benefit only the owners of the land involved. This is special legislation at its worst. Instead of comprehensive zoning, this is blatant spot or piecemeal zoning.

I would affirm the judgment below.