[Civil No. 4160.    Filed April 8, 1940.]

[101 Pac. (2d) 199.]

ROBERT NICOLAI and Mrs. W. F. CHRISTMAN, Appellants, v. BOARD OF ADJUSTMENT OF THE CITY OF TUCSON, Appellee.

Mr. J. B. Judge, Mr. Alfred Ronstadt and Messrs. Cusick & Lyons, for Appellants.

Mr. B. G. Thompson and Mr. Arthur Henderson, for Appellee.

LOCKWOOD, J.—This is an appeal from an order of the superior court of Pima county quashing a writ of *certiorari*. The circumstances out of which the case arose may be stated as follows:

Robert Nicolai and Mrs. W. F. Christman, hereinafter called petitioners, are the owners of Lots 1, 2, 3 and 4 in block 190 of the city of Tucson. On December 12, 1938, they applied to the building inspector of Tucson for the issuance of a building permit to construct on said property a warehouse and freight terminal, which application was refused by the inspector. Thereafter they filed an appeal to the board of adjustment of Tucson, hereinafter called the board, asking that the decision of the building inspector be overruled, and that a permit for the erection and operation of said warehouse and terminal be granted. On January 18, 1939, the board held a hearing, and took evidence, and overruled the decision of the building inspector and granted the permit as prayed for. Some nine days later the board, without notice to petitioners, decided that a public rehearing of the appeal would

be held on February 15th, and so notified the latter. On the date last named the hearing was postponed until March 15th, but before that date petitioners filed in the superior court of Pima county an application for a writ of *certiorari*, claiming that a rehearing was in excess of the jurisdiction of the board. The record was brought up and on April 27th the court rendered a judgment quashing the writ of *certiorari*, whereupon this appeal was taken.

The case involves the construction and effect of article 14 of chapter 12, Revised Code of 1928, being the state zoning law, and Ordinance No. 647 of the city of Tucson, which is an ordinance adopted under the authority of said article 14. The zoning law, so far as material to this case, reads as follows:

"§ 462. Grant of power. For the purpose of promoting the health, safety, morals, or the general welfare of the community, the legislative body of incorporated cities and towns may regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industrial, residence or other purposes, and may establish set back lines; and for such purposes may divide the municipality into districts of such number, shape, and area as may be deemed best suited for the purposes hereof. Within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in other districts."

"§ 463. Method of procedure by ordinance. The legislative body may provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced. . . . "

"§ 464. Board of adjustment. The ordinance may also provide for the appointment of a board of adjustment, with powers in an appropriate case to make special exceptions to the terms of the ordinance, in accordance with provisions therein contained. . . . Appeals to the board may be taken by any person aggrieved or by any officer, department, board or bureau of the municipality affected by any decision of any administrative official. . . .

" . . . The board shall fix a reasonable time for the hearing of the appeal and give notice thereof to the parties in interest and the public. The board shall: Hear and decide appeals when there is error in any order, requirement or decision, made by an administrative official in the enforcement of any ordinance adopted pursuant hereto; hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance; authorize in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship; reverse or affirm, wholly or partly or modify the order or decision, appealed from and to make such order or decision, as ought to be made, and to that end shall have the powers of the officer from whom the appeal is taken. . . . "

It is evident that this statute, which was originally adopted as chapter 80 of the regular Session Laws of 1925, was copied from the Standard State Zoning Enabling Act prepared under the auspices of the Federal Department of Commerce, which act has been adopted practically verbatim by approximately two-thirds of the states, including Arizona, Utah, Oklahoma, Texas, Missouri, North Dakota and Iowa. Under its authority the city of Tucson adopted Ordinance No. 647. It is lengthy, and we, therefore, summarize its provisions as follows, quoting it only when necessary: The ordinance, as amended, divides the city of Tucson into nine classes of use districts, A, B and C

residence districts, A, B and C business districts, and A, AA and B industrial districts. The boundaries of these districts are set forth on certain maps declared to be a part of the ordinance. Section 3 reads, in part, as follows:

"In any Class 'A' residence district, no building or premises not already so utilized shall be used, and no building or structure shall be erected, which is arranged, intended or designed to be used, in whole or in part, for any industrial, manufacturing, trade, or commercial purposes, unless herein otherwise provided, or for any other than one or more of the following specified purposes: . . . "

and then describes the uses to which buildings in the district may be put, and follows with many regulations as to the buildings to be erected therein. Similar provisions are found referring to each of the other eight districts.

It will be seen that it is expressly stated that no building in a district shall be used for any purpose except that for which specific permission is granted by the ordinance. Upon examining the ordinance further it appears that the use to which petitioners intended to put the building which they desired to erect was limited to classes A, AA and B industrial districts only, and that such erection or use within any other district was expressly prohibited. It also appears from the record that the district in which the property of petitioners is situated is a class C business district.

The ordinance grants the following powers to the board:

"Sec. 12. Powers of the Board of Adjustment. The Board shall have the following powers:

"1. To hear and decide after public notice and hearing, appeals where it is alleged there is error in any order, requirement, decision or determination made by the Building Inspector in the enforcement of this ordinance.

"2. To authorize upon appeal, after public notice and hearing, in specific cases such variance from the terms of this ordinance as will not be contrary to the public interest, where, owing to special conditions, the enforcement of the provisions of this ordinance would result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

"3. To permit in any district any use in keeping with the uses authorized in such district, though such use is not specifically mentioned in this ordinance."

The board, therefore, at its original meeting when it overruled the action of the building inspector and granted a permit for the erection of the building requested by petitioners, did so contrary to the express terms of the ordinance, unless it be held that section 464, *supra*, authorizes it to permit the erection and use of buildings within a district for a purpose prohibited by the ordinance. This precise question has been before the courts in the cases of *Walton* v. *Tracy L. & T. Co.*, 97 Utah 249, 92 Pac. (2d) 724; *Anderson-Kerr* v. *Van Meter*, 162 Okl. 176, 19 Pac. (2d) 1068; *Van Meter* v. *H. F. Wilcox Oil & Gas Co.*, 170 Okl. 604, 41 Pac. (2d) 904; *Harrington* v. *Board of Adjustment*, (Tex. Civ. App.) 124 S. W. (2d) 401; *State ex rel. Nigro* v. *Kansas City*, 325 Mo. 95, 27 S. W. (2d) 1030; *Livingston* v. *Peterson*, 59 N. D. 104, 228 N. W. 816; *Zimmerman* v. *O'Meara*, 215 Iowa 1140, 245 N. W. 715. In each of these cases it was held that authority such as is given by our statute to a board of adjustment, under an ordinance which expressly limited the erection and use of structures within a given district to certain specified purposes, to decide special exceptions to the terms of the ordinance and to authorize in specific cases a variance such as would not be contrary to the public interest, did not permit such boards to authorize a prohibited use of a building, but merely

to grant exceptions to the general rules governing the erection and maintenance of buildings which were used for an authorized purpose. The court, in *Walton* v. *Tracy L. & T. Co.*, *supra*, passing on a statute almost verbatim like ours, said [92 Pac. (2d) 726]:

"Can the Board then grant a variance in use or is it confined in its powers to variances in building and construction details within the specified uses? If the Board can grant a nonconforming use, that is, can authorize a prohibited use on one plot of ground within a district, it can as to all other plots of ground. Any variance in use is to the extent of such land in effect a rezoning or the placing of such land in a different zone than that in which the Commission by ordinance had placed it for the purpose of promoting the health, safety, morals and general welfare of the community. Such interpretation would permit the Board, an administrative agent merely, to set aside and in effect annul an ordinance, a legislative act of the Commission, and to do all the Commission itself might do. . . . If however the powers of the Board are limited to minor and practical difficulties, to such variations in detail and construction as the Inspector himself might have allowed rather than to use, the statute and set up are harmonious throughout, the hiatus is gone, and the purpose and spirit of zoning laws preserved so the City might develop according to a comprehensive plan and land be utilized to the best advantage consistent with the public policy and welfare. And this interpretation of the statute is in accordance with the great weight of authority. . . . "

It is true there are a few states which do permit a slight use extension, such as *In re Mark Block Holding Corp.*, 141 Misc. 818, 253 N. Y. Supp. 321; *Prusik* v. *Board of Appeal*, 262 Mass. 451, 160 N. E. 312, but they are the older cases and are in the minority. We are of the opinion that the later and better rule is that when an ordinance passed under a statute

like ours expressly prohibits the use of property within certain districts for certain purposes, a board of adjustment created by authority of the statute may not change the use established by the legislative body of the city through its ordinance, and that any such change must be by the legislative body itself through a new ordinance rezoning the property involved.

The action of the board at its first hearing when it granted a nonconforming permit to petitioners was, therefore, on its face in excess of its jurisdiction, and null and void. This being the case, we think it unnecessary for us to consider the question of whether boards of adjustment established under the statute may grant rehearings on valid orders made within their jurisdiction. If the first order was void, the second hearing was in law an original one and not a rehearing.

The judgment of the lower court is affirmed.

ROSS, C. J., and McALISTER, J., concur.