FRANCES S. WEAVER ET AL V. ROY L. HAM ET AL.

No. A-2606. Decided July 11, 1950.
Rehearing overruled October 11, 1950.
(232 S. W., 2d Series, 704.)

*W. R. Smith, Jr.,* of San Antonio, for petitioner.

The Court of Civil Appeals erred in failing to find that since there was no material change in the character of Zone A, or of the structures within said zone, or a reasonable distance thereof, from the time of the enactment of the basic ordinance to the time of amendatory ordinance, that said amendment is void and unenforcible. Harrington v. Board of Adjustment, 124 S. W. 2d 401; Barrington v. City of Sherman, 155 S. W. 2d 1008; Texas Consolidated Theatres v. Pittillo, 204 S. W. 2d 396.

*Hugh Robertson,* Assistant City Attorney, for the City of San Antonio, and *Maverick, Putman and Putman, Charles W. Grace, Maury Maverick* and *Maury Maverick, Jr., all* of San Antonio, for respondents.

MR. JUSTICE SHARP delivered the opinion of the Court.

This suit involves an amendatory ordinance adopted by the City of San Antonio on November 4, 1948, which amended the basic zoning ordinance adopted by the City of San Antonio on November 3, 1938. By the amendatory ordinance Block A-54, at the corner of McCullough Avenue and Bushnell Avenue, was changed from a Zone A single family residence district to a Zone D apartment house district.

Frances S. Weaver and others brought this suit against Roy L. Ham and others to annul and cancel the amendatory ordinance. The case was tried before the court without a jury, and the trial court rendered judgment annulling the amendatory ordinance and permanently enjoining the defendants from acting in any manner under the amendatory ordinance. The Court of Civil Appeals reversed the judgment of the trial court, and held that the amendatory ordinance was valid. 227 S. W. 2d 286.

Petitioners attack the validity of the amendatory ordinance on numerous grounds, but the following are the principal ones:

1. That the amendatory ordinance is null and void because at the time of its passage the City Commission did not have any substantial evidence before it to justify the change in zoning purposes or uses of said Block A-54 as prescribed in the original zoning ordinance of November 3, 1938.

2. That the said amendatory ordinance constituted "spot zoning," and was unconstitutional and void, in that it was arbitrary and unreasonable, and had no substantial relation to the public health, safety, morals, or general welfare.

3. That if respondents Ham and Rosow are permitted to pursue the proposed enterprise of erecting a large apartment house, it would destroy the desirability for single private home purposes of the entire section of the City in which petitioners reside, would serve only the private interest of said Ham and Rosow, and would be detrimental to the interests of petitioners herein and the general public.

4. That there has been no substantial change of conditions in or near the neighborhood where the change is requested since the enactment of the original zoning ordinance, which would warrant the "spot zoning" of Block A-54 and changing it from Zone A to Zone D.

Upon request the trial court made and filed its findings of

fact and conclusions and law, and since they are very lengthy, only a summary of the controlling facts will be set out. The trial court found:

That on November 3, 1938, the City of San Antonio, acting through its Commission, duly passed and approved a comprehensive zoning ordinance, pursuant to the provisions of Articles 1011a to 1011j, inclusive, of Vernon's Revised Civil Statutes; that the ordinance provided for the division of the city into several types of districts, including three designated respectively as: A, single family residence districts; D, apartment house districts; and B, residence districts.

That Zone A was defined in Section 3 of said ordinance, which provided: "In the A Single Family Residence District no buildings or land shall be used and no building shall be hereafter erected or structurally altered which is arranged or designed to be used for other than one or more of the following uses: (1) One-Family Dwelling; (2) Public Park or Play Ground; (3) Accessory buildings will be permitted, * * *." (It contained other provisions not relevant here.)

That Zone B was defined in Section 4 of said basic ordinance, which provided: "In the B Residence District, no building or land shall be used and no building shall be hereafter erected or structurally altered which is arranged or designed to be used for other than one or more of the following uses: (1) One-Family Dwellings. (2) Two-Family Dwellings. (3) Churches, Schools, and Colleges. (And several other purposes, which are not relevant here.) (7) Accessory buildings will be permitted, including a private garage and servants' quarters when located not less than sixty (60) feet from the front lot line, * * *."

That Zone D was defined in Section 5, jointly with Zones C and E, as follows: "In the C Residence District, and in the D and E Apartment Districts, no building or land shall be used, and no building shall be hereafter erected or structurally altered which is arranged or designed to be used for other than one or more of the following uses: (1) Any use permitted in the B Residence District. (2) Boarding or Lodging Houses. (3) Hospitals and Clinics, excepting tubercular and veterinary hospitals and clinics, and those for alcoholic, narcotic, insane or feeble-minded patients." (And several other purposes, which are not relevant here.) (7) Multiple Dwellings, Apartment Houses or Group Houses, not including tourist or trailer camps, courts or lodges."

The trial court further found that at the time of the adoption of said basic ordinance all structures in said Zone A district were one-family dwellings and their accessory buildings, with the exception of approximately four apartment house structures, and that Section 10 of said basic ordinance provided for these nonconforming uses.

The court found that by virtue of said Zoning Ordinance of November 3, 1938, all of the properties now respectively owned by petitioners and partly owned by respondents Ham and Rosow, including all of Block A-54, lay within the Zone A District; further, that Block A-54 is a tract of land near the center of the Zone A District, and is surrounded by said Zone A District; that Roy A. Ham and Eva Rosow own a vacant lot, 150 by 300 feet, out of said block, being about one-fifth of said Block A-54, and that the remainder of said Block A-54 is owned by two of the petitioners who opposed the passage of the amendatory ordinance.

It was found by the trial court that the tract of vacant land belonging to Ham and Rosow in Block A-54 is located at the corner of the intersection of McCullough Avenue and Bushnell Avenue, being one of the principal arteries of the City; that McCullough Avenue has been widened since the adoption of the basic ordinance, and that three blocks north of the Zone A. District, up McCullough Avenue and lying north of Hildebrand Avenue, is located a commercial district; that the part of this commercial district lying east of McCullough Avenue was designated as commercial by the basic ordinance, and the part of same lying west of McCullough Avenue has been classified as commercial by subsequent amendment; that approximately one and one-half miles to the south of said Block A-54, McCullough Avenue at the time of the trial of this case was being extended through and into Kenton Avenue, then into Fifth Street, and ultimately crossing Broadway, Houston, and Commerce Streets; that since the date of the enactment of the basic ordinance the population of the City of San Antonio has about doubled, and there is now, and has been for some time, a strong demand for apartments and other kinds of places of human habitation, and that there are suitable apartment house sites within the Zone D District; that the vacant lot of Ham and Rosow has available all utilities such as transportation, water, lights, telephone, and paved streets.

The trial court found that on or about November 4, 1948, at the request of respondents Ham and Rosow, the City Com-

mission passed and approved an amendment to said Zoning Ordinance, purporting to change the whole of said Block A-54 from a Zone A Family Residence Zone to a D Apartment Zone.

It was found that the basic ordinance at the time it was enacted bore substantial relation to the health, safety, morals, and general welfare of the community; that following the date of the enactment of the amendatory ordinance to the date of the trial there was no substantial change in the character of the Zone A District, or in the character of the structures therein, or of the uses thereof; that in the interval between the enactment of said two ordinances and the trial of the case no new structures were erected in the Zone A District, other than additional one-family dwellings, and that there was no change in the use of any property therein in violation of the basic ordinance. It was also found that there was no substantial evidence at the hearing which justified a change in the zoning properties or the uses of said Block A-54 from those prescribed by the basic ordinance; that the undisputed evidence was that the amendatory ordinance did not in fact bear any substantial relation to the public health, safety, morals, or general welfare; that there was no substantial evidence at the hearing that a change of the zoning classification of Block A-54 was demanded in the interest of the health, safety, morals, or general welfare of the community; and that no fairly debatable issue was raised by the evidence, either at the hearing or before the court, that would sustain the amendatory ordinance as being substantially in the interest of the health, safety, morals, or general welfare of the public.

The trial court found that the amendatory ordinance creates a small and unwarranted Zone D island in the center of the said Zone A District, which "constitutes unjustifiable spot zoning." The court then found, as a matter of law, that the action of the City of San Antonio, by and through its City Commission, constituted an abuse of its discretion; that the amendatory ordinance is arbitrary and unreasonable; that same is not substantially in the interest of nor to promote the health, safety, morals, or general welfare of the community; that the enactment of the amendatory ordinance was not within the scope of the police power of the City, and that the same is unconstitutional and void.

■ The importance of zoning districts has been emphasized by the growth of cities. The zoning question has been given careful attention and much study. As a result, by the enactment of

ordinances cities have created zones, stipulating that only a certain type of building may be erected therein. This is done under the police power of the cities, exercised in the interest of the safety, health, morals, or welfare of the public.

The rezoned area under consideration comprises three contiguous tracts of land, two of which are owned and occupied as homes by Frances S. Weaver and Charles Schreiner, Jr. The third is a vacant tract, owned jointly by Ham and Rosow, who sought the adoption of the amendatory ordinance. These three tracts comprise Block A-54, and this block is not bounded on all its sides by streets. Only its west and south boundaries front on streets.

The proceedings in this case arose under the Acts of the 40th Legislature, 1927, page 424, chapter 283, listed as Articles 1011a to 1011j, inclusive, Vernon's Annotated Civil Statutes. In 1949 the Legislature amended certain articles of the Statutes relating to the power of cities to enact zoning ordinances, but they are not applicable to this case. Article 1011a grants to a city the power to regulate, "For the purpose of promoting health, safety, morals, or the general welfare of the community," the size of buildings and their location and use, more particularly described in the Article. Article 1011e provides how such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified, or repealed. Article 1011g provides for a board of adjustment, etc., and that any person aggrieved by a decision of the board of adjustment may appeal from its decision, and describes the manner of appeal. The law provides that, "The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

This Court, in the case of City of Sherman v. Simms et al., 143 Texas 115, 182 S. W. 2d 415, in construing the zoning statutes, said: "The justification for zoning rests in the police power of municipalities. In the exercise of that power arbitrary and discriminatory regulations will not be upheld, but only such regulations as are reasonable and have a substantial relation to the health, safety, morals or general welfare of the community." Also, in the case of City of San Angelo v. Boehme Bakery et al., 144 Texas 281, 190 S. W. 2d 67, in construing the zoning statutes, this Court held that the procedure in this type of proceedings is not analogous to the procedure in an appeal from an order of the Railroad Commission granting or refusing a permit to drill an oil well. It was held that the courts had the power to hear such a case, and "may reverse or affirm,

wholly or partly, or may modify the decision brought up for review," and from a consideration of the whole record "determine whether or not the board abused its discretion."

The power of the City of San Antonio to pass the basic zoning ordinance is not questioned. Petitioners, however, vigorously assail the action of the City in "spot zoning" Block A-54 by changing it from Zone A to Zone D, when there is in fact no changed conditions to justify such change. More liberality is given cities to enact basic zoning ordinances than is given them to enact "spot zoning" ordinances. In this instance the City of San Antonio enacted the basic zoning ordinance, and the people living in Zone A adjusted themselves to the restrictions expressed in the ordinance. Petitioners built their residences in accordance with its requirements. Respondents Ham and Rosow, after the enactment of the basic ordinance, purchased part of Block A-54 and requested that that block be rezoned. Not only those who owned the larger portion of the block protested against the enactment of the amendatory ordinance permitting the construction of apartments in part of the block, but many others who lived in that neighborhood also protested.

The basic ordinance clearly defines the zone in which apartments may be constructed. The amendatory ordinance changes the conditions in Zone A by permitting apartments to be erected in Block A-54. The right to permit the erection of apartments in zones defined for residences has been critically examined. In the memorable case of Village of Euclid et al. v. Ambler Realty Co., 272 U. S. 365, 71 Law. Ed. 303, 47 Sup. Ct. Rep. 114, 54 A. L. R. 1016, in discussing the benefits derived from zoning ordinances, and in confining certain buildings to certain districts, the Supreme Court of the United States said:

"With particular reference to apartment houses, it is pointed out that the development of detached house sections is greatly retarded by the coming of apartment houses, which has sometimes resulted in destroying the entire section for private house purposes; that in such sections very often the apartment house is a mere parasite, constructed in order to take advantage of the open spaces and attractive surroundings created by the residential character of the district. Moreover, the coming of one apartment house is followed by others, interfering by their height and bulk with the free circulation of air and monopolizing the rays of the sun which otherwise would fall upon the smaller homes, and bringing, as their necessary accompaniments, the disturbing noises incident to increased traffic and business,

and the occupation, by means of moving and parked automobiles, of larger portions of the streets, thus detracting from their safety and depriving children of the privilege of quiet and open spaces for play, enjoyed by those in more favored localities,—until, finally, the residential character of the neighborhood and its desirability as a place of detached residences are utterly destroyed. Under these circumstances, apartment houses, which in a different environment would be not only entirely unobjectionable but highly desirable, come very near to being nuisances." For a discussion of other decisions on this point, see the opinion of this Court in Lombardo v. City of Dallas et al., 124 Texas 1, 73 S. W. 2d 475.

■ The zoning statutes of this State are substantially like the ones adopted in many other states, and the basic zoning ordinance adopted by the City of San Antonio in this instance is similar to ordinances adopted by many cities in other states. Consequently, when similar fact conditions are presented, the constructions of statutes and ordinances by the courts of other states are very helpful in the construction of similar ordinances and statutes enacted in this State.

■ The power to vary conditions of zoning ordinances should be sparingly exercised, and such power should be exercised only for the benefit of the public and with due regard for the preservation of the rights of others acquired under original zoning ordinances. Harrington v. Board of Adjustment, Tex. Civ. App., writ refused, 124 S. W. 2d 401; W. F. Lee et al. v. Board of Adjustment of City of Rocky Mount In Re S. L. Edmondson, 226 N. C. 107, 168 A. L. R., 1, 37 S. E. 2d 128; Real Properties, Inc., v. Board of Appeal of the City of Boston, Brockton Savings Bank v. Same, Julius Kalman et al v. Same, 319 Mass. 180, 168 A. L. R., 8, 65 N. E. 2d 199; Bray et al. v. Beyer et al. 292 Ky. 162, 166 S. W. 2d 290; Anderson v. Jester, 206 Iowa 452, 221 N. W. 354; Nicolai v. Board of Adjustment, 55 Ariz. 283, 101 P. 2d 199; Livingston v. Peterson, 59 N. D. 104, 229 N. W. 816; Walton v. Tracy Loan & Tr. Co., 97 Utah 249, 92 P. 2d 724. See Annotation of Cases in 168 A. L. R., p. 13.

The City had the power to enact the basic zoning ordinance, and to amend it, if a public necessity demanded it. While the presumption would be that the enactment of the amendatory ordinance was valid, that presumption disappears when the facts show and it was determined by the court that the City acted arbitrarily, unreasonably, and abused its discretion; that the ordinance is discriminatory and violates the rights of petitioners

under the basic ordinance, and does not bear any substantial relation to the public health, safety, morals, or general welfare; that it "constitutes unjustifiable spot zoning"; and that the ordinance is void. Barrington v. City of Sherman, Tex. Civ. App., 155 S. W. 2d 1008, writ refused w.o.m; Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas 396, 84 S. W. 648, 654, 70 L. R. A., 850; Lombardo v. City of Dallas, supra; Simms v. City of Sherman, supra.

The Court of Civil Appeals correctly held in this case as follows: "In the consideration of this case we have carefully borne in mind that the purpose of endowing the city with police power is to subserve the general welfare. If it appear from the terms of the ordinance or is established by the evidence as a matter of law that it does not so do, then the legislative act is void. City of West University Place v. Ellis, 134 Texas 222, 134 S. W. 2d 1038; Simms v. City of Sherman, Tex. Civ. App., 181 S. W. 2d 100; Page v. City of Portland, 178 Or. 632, 165 P. 2d 280."

■ The trial court found that the amendatory zoning ordinance which changed Block A-54 from a residential district to an apartment house district "constitutes unjustifiable spot zoning." Spot zoning is generally condemned. Page v. City of Portland, 178 Or. 632, 165 P. 2d 280; Mueller v. Hoffmeister Undertaking and Livery Co., 343 Mo. 430, 121 S. W. 2d 775; Rowland v. City of Racine, 223 Wis. 488, 271 N. W. 36; Heubner v. Philadelphia Saving Fund Society, 127 Pa. Sup. Ct. 28, 192 A. 139; Linden Methodist Episcopal Church v. City of Linden, 113 N. J. L. 188, 173 A. 593; Leahy v. Inspector of Buildings, 308 Mass. 128, 31 N. E. 2d 436; Evanns v. Gunn, 29 N. Y. S. 2d 368, 177 Misc. 85; Johnson v. City of Huntsville, 249 Ala. 36, 29 So. 2d 342; Cline v. Nether Providence Tp. Board, 33 Del. Co. 293; Chapman v. City of Troy, 241 Ala. 637, 4 So. 2d 1; Snow v. Johnston, 197 Ga. 146, 28 S. E. 2d 270; Whittemore v. Building Inspector of Falmouth, 313 Mass. 248, 46 N. E. 2d 1016; DeBlasiis v. Bartell, 18 Atl. 2d 478, 143 Pa. Super. 485; Yokley, Zoning and Practice, pp. 160-171; 128 A. L. R. 740; Marshall v. Salt Lake City, 105 Utah, 111, 141 Pac. 2d 704, 149 A. L. R. 292.

The trial court having correctly determined that the amendatory ordinance was invalid, the Court of Civil Appeals erred in substituting its conclusions for those of the trial court and in reversing the judgment of the trial court and declaring the

amendatory ordinance valid. The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.

Opinion delivered July 12, 1950.

Rehearing overruled October 11, 1950.