**CITY OF LUBBOCK et al., Appellants,**

**v.**

**E. M. WHITACRE et al., Appellees.**

No. 7676.

Court of Civil Appeals of Texas.

Amarillo.

April 3, 1967.

Rehearing Denied May 8, 1967.

This is an appeal from a judgment of the trial court holding the City of Lubbock's Ordinances Nos. 4870 and 4870–A, amending the basic zoning Ordinance No. 1695 of the city to be unconstitutional, invalid under Subsection 14–A.1–9 of Section 14–A.1 of such basic zoning ordinance, and invalid for various other reasons. In 1941 the City of Lubbock approved a comprehensive zoning ordinance under the authority of Articles 1011a to 1011j of Vernon's Ann.Texas Revised Civil Statutes. In 1959 that original ordinance was repealed and in lieu thereof Ordinance No. 1695, the present basic zoning ordinance of the city was adopted.

In October 1965 in Zone Case No. 1369 a request was filed by Ray Chapman, Lubbock realtor, on behalf of University Dormitory Development, Inc., Bernard B. Heilprin, and Harold E. Strauss, hereinafter called intervenors, with the Planning and Zoning Commission of such city for a zone change of certain properties situated on the southwest corner of the intersection of 19th Street and College Avenue, extending south one block to the northwest corner of College Avenue and 20th Street, on which they held options to purchase. The proposed improvements consisted of a twelve-story apartment building, which the record indicates was to be utilized principally for housing Texas Tech male students, the campus of such institution being located just across 19th Street, northwest from the intersection.

The city Planning and Zoning Commission recommended to the city council that the request for the zone change be denied. Appeal was made to the city council, and after due notice the matter was heard by the council, resulting in unanimous passage of Ordinance No. 4870 authorizing the issuance of a Specific Use Permit for the private apartment project. Intervenors, having acquired additional options on Lots 16, 17, 18, 19 and the west half of Lot 20 adjoining the zone change area, filed on November 11, 1965, an application which is designated zone case 1369–A amending the

Fred O. Senter, Jr., City Atty., Sam C. Rodehaver, Asst. City Atty., Evans, Pharr, Trout & Jones, E. G. Pharr and Carlton B. Dodson, Lubbock, for appellants.

Anderson, Edwards & Warnick, Hugh Anderson, Lubbock, for appellees.

CHAPMAN, Justice.

This opinion is in lieu of our opinion announced on February 6, 1967.

1369 application. Amendatory Ordinance 4870–A was later passed for the stated purpose of clarifying and correcting Ordinance No. 4870 " * * * to more accurately reflect the legislative intent and action of the city council." It is these ordinances which were under attack in the trial court.

The five fifty-foot lots situated on the southwest corner of 19th Street and College Avenue in the zone change area belong to Texas Technological College Foundation and at the time were zoned to permit banks, retail bakeries, bowling alleys, cleaning and pressing establishments, self-service laundries, office buildings, moving picture theaters, and pool halls. The other lots in the zone change area upon which the above named corporation acquired additional options were at the time zoned R–1, limiting their use to single family residences. Ordinance 4935 under zone case No. 1380, amending Ordinance No. 1695, was also passed by the city council about the same time as the two named ordinances attacked in the trial court. This ordinance changed lots in the adjacent area of Elwood Place Addition to an R–3 zoning district.

Prior thereto Basic Ordinance 1695 had been amended by Ordinance No. 4665, adding thereto Section 8–B to provide regulations intended to encourage higher density, multi-family developments at locations in or near the central part of the city or in the immediate vicinity of population concentrations and activities such as Texas Technological College.

A jury was impaneled to pass upon the controversial facts but during the trial all parties agreed the jury might be dismissed and all issues of fact determined by the court. Judgment was rendered in which the City of Lubbock and Robert Burr were permanently and perpetually restrained and enjoined from issuing a Specific Use Permit for construction of a private apartment project provided for in Ordinances Nos. 4870 and 4870–A and said city and

Kimsey Miller were permanently and perpetually restrained and enjoined from issuing a building permit for the construction of any structure of the character of a private apartment project as provided for in the last two named ordinances.

Section 14–A.1 of the City of Lubbock's basic zoning ordinance No. 1695 is titled "Specific Use Permits." It provides that the city council, after public hearing and proper notice to all parties affected, after recommendation from the Planning and Zoning Commission, and numerous other provisions may authorize the " * * * location of any of the following uses in the specified districts." Among those is 14–A.1–9 reading: "Private apartment projects on a minimum site of two and one-half acres or on one block of street frontage, whichever is smaller in a district." Construction of Section 14–A.1–9 presents one of the legal problems to be later discussed.

The case is before us upon fifty-seven points of alleged error. Appellants, under their first Statement of Facts, Argument and Authorities group thirty-eight of their various points. Under Points 1 and 2; 6 through 9, 12, 17, 18, 22, 28, 30, 33–36 and 44 they challenge the holding of the trial court to the effect that the zoning was an arbitrary and unreasonable abuse of the city's discretion; a violation of the police powers was detrimental to the private interest of the parties surrounding the areas, and that the zoning bore no substantial relationship to the general health, safety, morals or general welfare of the community.

The trial court made thirty-two pages of original findings of fact and conclusions of law and an amendment thereto, additional findings, and also refused certain requests for additional findings.

■ The use of the type permit here under consideration; i. e., a Specific Use Permit, to amend a comprehensive zoning ordinance has been recognized and ap-

proved by the courts of Texas. Stearman v. City of Farmers Branch, 355 S.W.2d 541, (Tex.Civ.App.–Dallas, 1962, writ ref'd n. r. e.); Clesi v. Northwest Dallas Imp. Ass'n, 263 S.W.2d 820 (Tex.Civ.App.–Dallas, 1953, writ ref'd n. r. e.).

■ Even with the rapid growth of some of the cities of Texas and the resulting escalation of zoning controversies, the controlling questions are rarely, if ever, the same in any two cases. However, the courts of Texas have established some basic legal principles we believe applicable here that appear to have been consistently adhered to by the appellate courts. Among these principles are the following:

1. Courts should not interfere with such actions of the city council unless it appears that the ordinance represents a clear abuse of discretion, and an extra-ordinary burden rests on the one attacking the ordinance. " '* * * to show that no *conclusive,* or even *controversial* or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it." City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477 (1955).

2. "The presumption of validity accorded original comprehensive zoning applies as well to an amendatory ordinance." City of Waxahachie v. Watkins, supra. See also Weaver v. Ham, 149 Tex. 309, 232 S.W.2d 704 (1950) and Clesi v. Northwest Dallas Imp. Ass'n, supra.

3. "In either case the courts have no authority to interfere unless the change is clearly unreasonable and arbitrary." City of Waxahachie v. Watkins, supra.

4. " 'If the question is fairly debatable as to whether the zoning ordinance is arbitrary and unreasonable and has no substantial relation to public health, safety, morals, or general welfare, the court will not interfere.' " City of Corpus Christi v. Jones, 144 S.W.2d 388, 398 (Tex.Civ.App.–San Antonio, 1940, writ dism'd, jdgmt corr.).

5. "Since it is an exercise of the legislative power of the city's council, the ordinance must be presumed to be valid." City of Waxahachie v. Watkins, supra.

6. Whether appellees met their burden to show there were no controversial or issuable facts which would authorize a city council to exercise its discretion in the manner here complained of presents a question of law, not of fact, and in deciding it the court should have due regard " * * * to all circumstances of the city, the object sought to be attained and the necessity for the ordinance." City of Waxahachie v. Watkins, supra.

7. " * * * if there is an issuable fact as to whether the ordinance makes for the good of the community, *the fact that it may be detrimental to some private interests is not material.*" City of Waxahachie v. Watkins, supra, citing Edge v. City of Bellaire, 200 S.W.2d 224, 227 (Tex.Civ. App.–Galveston, 1947, writ ref'd n. r. e.). (Emphasis added.)

■ It is common knowledge in this 7th Supreme Judicial District that Lubbock has rapidly increased its population in recent years, of which we may take judicial knowledge. The evidence shows Texas Tech had doubled in its number of students in the last ten years before trial and Mr. Pennington, Vice-President of Business Affairs at the school, testified there is at present insufficient housing for students; that the Board of Directors had established a policy of inviting private capital to erect off-campus housing; that the institution does not believe it can construct sufficient housing for its students; that if the school continues its present growth there will be 25,000 students by 1968, 35,000 by 1975 and 36,700 by 1978. The last estimate was projected by the Coordinating Board of the Texas College and University System. He also testified the construction of the proposed twelve-story apartment would be acceptable to the school and in approving the project he took into consideration the park-

ing facilities and parking area shown on the exhibits here in evidence.

Don Osborn, a realtor for sixteen years and past president of the Lubbock Realty Board, testified in effect that in his opinion the construction of the proposed apartment would adhere to the public welfare and would increase the value of the surrounding property. He gave an instance of an owner of a lot in the adjacent territory who lived in Mineral Wells. He had offered the lot for as little as $2,000. When there was some talk of the apartment project he was able to sell it for $5,000. Two months later that buyer sold it for $10,000. There is other testimony from realtors to the effect that the construction of the building would make the area one of the most prestigious in Lubbock and would add a taxable item of more than $4,000,000 for the community.

Dr. Green, a witness for appellees, lives on 20th Street just across from the proposed structure. He testified he works for the state in the museum at the college and that in his opinion the building of the apartment would devalue his property. However, he admitted on cross-examination he had friends who are reasonable people who disagree with him.

There is also testimony by others to the effect that the construction of the building would devalue the property in the area and would not be to the best interests of the city.

Appellees admit by brief that " * * * in the trial court the presumption is that the zoning ordinances are valid until it be shown to the court by evidence at the trial that there are no issuable facts or substantial facts to support the ordinances," then rely on Weaver v. Ham, supra, to sustain their contention to the effect that the city acted arbitrarily, unreasonably, capriciously, and abused its discretion; that the ordinances are discriminatory, do not bear any substantial relation to the public health, safety, morals or general welfare; and constitute unjustifiable spot zoning.

The record shows the property to the north of the zone change area on the east side of College Avenue is commercial for several miles; that the same applies to both sides of 19th Street east of the zone change area; that there are a few residences immediately west but they are joined on the west of them by the Lutheran Student Center, a private apartment project, St. Mary's Hospital, parking lots and other non-resident uses. On College Avenue south of 19th Street and the College Avenue intersection there is property commercially zoned and used between 19th and the alley between 19th and 20th, residences on College Avenue to 23rd Street, then additional commercial usage of the property.

■ We conclude from the facts stated, other facts shown in the record, and the authorities above cited that there were issuable facts which tend to establish that the legislative body of the City of Lubbock did not abuse its discretion in zoning the property here involved to the Specific Use Permit, provided it conforms to the necessary area or space. It will be noted that in City of Waxahachie v. Watkins, supra, the Supreme Court of Texas in referring to the police power used the conjunction "or" in the language, "health, safety, morals *or* general welfare," as do other authorities. City of Corpus Christi v. Jones, supra; Weaver v. Ham, supra.

When due regard is given to all circumstances of the city, the object sought to be obtained in providing housing for boys who are students in Texas Technological College in order that more girls might be provided housing on the campus, the extra taxes the privately owned apartment would pay the taxing authorities, the attractiveness the building would contribute to the less attractive commercial property in the area, as shown by the exhibits, we feel compelled to hold that appellees failed to show there were not any " * * * conclusive, or even controversial or issuable, facts or conditions" existing which would permit the governing board of the munici-

pality to exercise the discretion confided to it in granting the zone change area. The evidence clearly shows that reasonable minds could differ as to whether such rezoning was in the best interest of the public health, safety, morals or general welfare of the community, and particularly the general welfare.

■ . We are not unmindful of the statement in Weaver v. Ham that " * * * power to vary conditions of zoning ordinances * * * should be exercised * * * with due regard for the preservation of the rights of others acquired under original zoning ordinances." We believe such statement may be reconciled with the holding in City of Waxahachie v. Watkins, supra, wherein the same court held " * * * if there is an issuable fact as to whether the ordinance makes for the good of the community, the fact that it may be detrimental to some private interest is not material," citing Edge v. City of Bellaire, supra.

■ There is little analogy to the facts in the respective cases. In the Weaver v. Ham case the city council had rezoned a lot 150 feet by 300 feet comprising only approximately one-fifth of the area of the block completely surrounded by single family residences and three blocks away from any commercial uses, and even those were not totally unconnected with continual residential uses. As the facts above related show, much of the territory around the zone change area in the instant case is already commercial. Additionally, there is not shown by the facts in that case as valid a necessity existing for the zone change as in our case, "all the circumstances of the city, the object sought to be attained" being considered. The Weaver v. Ham case is authority for an example of spot zoning, which we do not believe exists in our case and we believe the trial court was in error in so finding. See also Burford v. City of Austin, 379 S.W.2d 671 (Tex.Civ. App.-Austin, 1964, writ ref'd n. r. e.); B. E. M. Homeowners Ass'n v. City of

Fort Worth, 372 S.W.2d 364 (Tex.Civ. App.-Austin, 1963, no writ).

The next group of points have to do with the questions of whether the zone change area does not comprise 2½ acres or does not contain " * * * one block of street frontage between intersecting streets, whichever is smaller in any district."

Numerous findings of fact and conclusions of law were made by the trial court. Among those were Findings of Fact Nos. 11 and that part of 17 which finds: "The zone change area does not have one block of street frontage between intersecting streets," and Conclusions of Law No. 6 making the same conclusions of law represented in the two fact findings just mentioned. These are to the effect that the Specific Use Permit provided for in Ordinances Nos. 4870 and 4870-A permits the construction of the apartment upon a site that does not contain 2½ acres or one block of street frontage between intersecting streets, as required in Section 14-A.1-9 under Specific Use Permits of the Basic Ordinance No. 1695.

Ordinance Nos. 4870 and 4870-A based upon the request made in Zone Case 1369 provides the Specific Use authorized by the ordinance is for a private apartment project and that applicants shall comply with certain conditions, to-wit:

"A strip of land on the west side of College Avenue extending from 19th Street to 20th Street and averaging 40' to 43' in width, as shown on the site plan shall be dedicated to the public for College Row. Said dedication to be made prior to issuance of a building permit."

The second paragraph of Subsection 3 under Section 4 of the ordinance provides the conditions imposed, one of which we have just quoted, shall not be construed as conditions precedent to the granting of a Specific Use Permit, but shall be construed as a condition precedent to the granting of a building permit and the certificate of occupancy.

Section 5 of the ordinance then provides that the conditions imposed by Section 4 thereof shall not be construed as reducing the area of such zone change below 2½ acres as required by Section 14–A.1–9.

■ A strictly technical reading of the ordinance would suggest, as we held in our first opinion, that the ordinance did not preclude the granting of a zone change to a Specific Use Permit but that it did require 2½ acres before a building permit or certificate of occupancy could be issued and it therefore was contrary to the requirement of Basic Ordinance 14–A.1–9. However, *in a further study of Ordinance 4870–A it* appears by the language of Section 5 of the ordinance that the city was attempting to comply with 14–A.1–9 by requiring the zone change area to have 2½ acres at the time the specific zone change was granted but as a condition of building and occupancy the owner must dedicate the described strip. This holding is not inconsistent with the ordinary requirements by cities that certain parts of lots on which buildings are constructed shall be used for sidewalks, alley rights-of-way, etc. The 2½ acres are still on the property, and title is still in the owners. They are just required "* * * for the purpose of protecting the health, safety * * * and general welfare of the public generally, users of streets in the area, and surrounding property owners" to dedicate the designated strip for the use of the public as a condition for securing a building permit and certificate of occupancy. Our court has held in Beene v. Bryant, 201 S.W.2d 268 (Tex.Civ.App.–Amarillo, 1947, no writ) as follows:

"An ordinance * * * should be construed in its entirety, giving effect to every part of it and it should be construed most strongly against the contestant and most liberally in favor of the best interest of the public. Ordinances are to be construed according to the ordinary meaning of the language used therein, and the proper grammatical effect of their arrangement, *but a literal construction will not be given where it will defeat the purpose of the ordinance.* The intention of the City Commission should be ascertained, if possible, in construing a city ordinance and the manifest purpose of the ordinance must be given effect, if it is capable of such construction, so as to express its real purpose and not what its purpose might have been. An ordinance should be reasonably construed and not in a manner repugnant to common sense and it should be construed more as to substance rather than as to form. Any reasonable doubt as to its construction or validity should be resolved in its favor and if it be susceptible of two constructions, one valid and the other void, the former should be chosen, especially if it be for the best interest of the general public."

When we apply the rules just stated to the subject ordinances, we believe they may be held to be valid.

■ If we should be in error in the holding just made, then we say the requirement of the dedication strip in Ordinance 4870–A is in conflict with Section 14–A.1–9 of the basic ordinance, is invalid for that reason, is surplusage, and should not be considered to affect the remaining portions of the ordinance, which is complete without such condition. It has been held: "A municipal ordinance may be void as to some of its provisions and valid as to others. Where the ordinance is severable, so that invalid provisions may be eliminated and a valid ordinance left, the invalidity of a part will not invalidate the whole." City of Fort Worth v. Atlas Enterprises, 311 S.W. 2d 922 (Tex.Civ.App.–Fort Worth, 1958, writ ref'd n. r. e.).

Accordingly, we hold the enactments of Ordinances Nos. 4870 and 4870–A were not invalid as constituting unjustifiable spot zoning, that they were substantially related to the general welfare of the community involved and that the enactments of such ordinances did not constitute arbitrary and unreasonable abuse of discretion on the

part of the city counsel of the City of Lubbock. We also hold the zone change area contains as much as 2½ acres within the meaning of the subject ordinances. In the event we should be in error in the conclusion just made, then we hold the requirement of the dedication strip is in conflict with Section 14–A.1–9 of the basic ordinance, is invalid and should not be considered to affect the remaining portions of Ordinance 4870–A, which is complete without such condition.

Accordingly, the judgment of the trial court is reversed and rendered in favor of Intervenors and the City of Lubbock.