**CITY OF BEAUMONT, Appellant,**

v.

**George SALHAB, Appellee.**

**No. 8391.**

Court of Civil Appeals of Texas, Beaumont.

Jan. 10, 1980.

Rehearing Denied Jan. 31, 1980.

---

Kenneth E. Wall, City Atty., Beaumont, for appellant.

Anthony Brocato, Beaumont, for appellee.

DIES, Chief Justice.

This case arose from the rezoning of a twenty-seven acre tract of land in the City of Beaumont owned by plaintiff below, George Salhab, and lying along the north side of Washington Boulevard—between Interstate Highway 10 (IH 10) and Eleventh Street. Under the 1955 original comprehensive zoning ordinance of the City of Beaumont, plaintiff's tract was zoned industrial (I–1) and remained so classified until September 1978, when it was rezoned by Ordinance 78–95. Ordinance 78–95 zoned the eastern portion of the tract—the Eleventh Street end—commercial (C–1), and the western portion of approximately seventeen acres, multi-dwelling residential (R–2).

Subsequently, Ordinance 79–2 returned the northwestern portion of the tract, containing approximately 5.8 acres, to its industrial classification and that portion of the total tract is not in issue. Plaintiff contended, and the trial court, found, that the rezoning of his tract was not substantially related to the public health, safety, morals, or general welfare of the community; that the rezoning was an abuse of municipal discretion; and that Ordinance No. 78–95 was arbitrary and void. From this judgment, City of Beaumont has perfected this appeal. In this opinion, the western portion rezoned R–2 will sometimes be referred to as Tract 1; the eastern portion C–2 will sometimes be referred to as Tract 2.

City's first eight points all challenge these findings. We deem it helpful to first set forth the evidence adduced in this trial.

Jesse Roland Torres, Assistant Director of Planning and Zoning, City of Beaumont, Planning Department, with a Bachelor and a Masters degree from Texas A. & M. University, has among his duties reviewing applications for rezoning. As Assistant Director, he conducted an examination and fact finding study of the Salhab tract for the purpose of making a recommendation to the Planning and Zoning Committee. In this investigation, he was assisted by Mr. Anderson, the director of the department. They were the exclusive fact finding representatives for the City, "up to and including the time the ordinance was passed." In carrying out this responsibility, many factors are examined. It would unduly lengthen this opinion to enumerate them all, but in general they looked "for any types of influences which would influence the development of the property within a reasonable distance." There have been no zoning amendments of the Salhab tract since 1955 and the time of their investigation.

They found from a planner's standpoint that there has been little change in the conditions of the Salhab tract or the neighborhood since 1955. In examining the traffic on Washington Boulevard "well more than half . . . was . . . commercial or industrial." Between Eleventh Street and the Freeway, Washington Boulevard has two eastbound and two westbound lanes. "One of the purposes of the re-zoning study was to recommend zoning . . . that would encourage development." They did not recommend the rezoning of Tract 1 from I–1 to R–2 because it would not encourage development. They found no facts in their study that would support rezoning of Tract 1 from I–1 to R–2. This witness was present during all the planning and zoning commission hearing and joint hearings before the City Council and could recall no evidence presented that would justify this rezoning. In fact, no evidence at all was presented. The rezoning ordinance of September 1978 (the one at issue) would not in any way lessen traffic congestion on Washington Boulevard, and it was not designed to secure safety, nor would it accomplish the promotion of the "health and gen-eral welfare." This rezoning "doesn't seem to be compatible for the development around it." It would not encourage the most appropriate use for this property (Tract 1). The staff's proposal was to rezone the Salhab tract to C–1 and not the "split zoning" as passed by the Commission. The zoning after the ordinance in question left the Salhab property in three zones (I–1, R–2, and C–1) which are not compatible. It has been very seldom that the City has changed a zone from I–1 to R–2, perhaps only two since 1962. The noise from IH 10 is one factor against the suitability of Tract 1 as R–2 residential. The Salhab property fronts on Washington Boulevard, approximately a quarter of a mile, the entire distance from Eleventh Street to IH 10. The eastern portion was rezoned C–1, and the western R–2 (by the ordinance in question).

The Planning and Zoning Department's recommendation to rezone the Salhab tract to C–1 would permit commercial development. The recommendation to rezone Tract 1 to R–2 had come from the Council; it did not come from the Planning Department or the Zoning Commission.

John K. Anderson, Director of Planning and Zoning for the City of Beaumont, assisted Mr. Torres in the fact finding study of the Salhab property. He confirmed Torres' testimony. There have been no characteristic changes in this neighborhood since 1955. The ordinance in question was not a proper zoning of the Salhab property.

W. K. Hall, a real estate appraiser, gave his opinion that the Salhab tract immediately before rezoning had a market value of $596,840; after the zone change, $242,775, for a diminution of $354,065. This property was not suitable for apartments. H.U.D. would not approve public housing on a busy thoroughfare, and in fact turned one down on Washington Boulevard. This property is not suitable for R–2 zoning. The tract zoned R–2 is next to the Freeway (IH 10), and yet it has the highest restrictions on it. Hall has had experience in trying to obtain financing for apartments, and he thinks it would be unlikely on Tract 1 because of the Freeway and Washington Boulevard.

Cris Mayo, Executive Director for the Housing Authority for the City of Beaumont, testified for the City. The south end of Beaumont needs subsidized apartments. In his opinion, Tract 1 would be suitable for this purpose.

Wilbur J. Balmer, Public Works Coordinator for the City, testified IH 10 (the Freeway) was constructed between 1958 and 1962; that Hildebrant Bayou was relocated west of IH 10; that since 1962 Washington Fire Station was constructed on Washington Boulevard between Eleventh Street and IH 10. Between 1962 and 1967, "the Bunny Club" was built on the northeast corner of the Salhab tract. Since 1967, at Eleventh Street on the southside, Modica Brothers have built a filling station. On the east side of the fire station is now Wickes Lumber Co. And more recently was constructed Beaumont Spring Company, next to Wickes. In 1955 (at the time of the original zoning), Washington Boulevard was a dirt street. In 1962, a twenty-two foot slab was installed which in 1973 was increased to forty feet, and "guttered with industrial collector."

On the southside of Washington Boulevard west end, there is a residential area—Fleetwood Addition. This addition has had street and curb improvements and more are expected. This area is across Washington Boulevard from the portion of the Salhab tract rezoned R–2. In 1968, it was his opinion all of the Salhab tract should be zoned industrial. He had no input in the September 1978 amendatory ordinance. Washington Boulevard is "under the industrial collector standards." Traffic on Washington Boulevard has increased very substantially, including industrial traffic. West, between the Fleetwood Addition and IH 10, there is commercial development, and "industrial plaza."

Underwood Hill, Director of Water Utilities, City of Beaumont, said the first water line installed along Washington Boulevard was in 1958, and the first sewer line was in 1964 (between Eleventh Street and IH 10).

Jim Lee, Director of Traffic and Transportation for the City, testified that the City's plan for Washington Boulevard west of Eleventh Street is a "major arterial street." Traffic on this boulevard will grow substantially. The development commercially of all this strip (from Eleventh Street west to IH 10) would increase this traffic. Any development, even residential, will increase this traffic.

M. L. Lefler, Jr., real estate agent, felt the portion rezoned from I–1 to C–1 would not diminish in value because the difference is not that great. It was his opinion the west portion zoned R–2 would be suitable for apartments. He did believe this change in zoning would result in a diminution of the property (Tract 1, R–2). The fact that just north of this tract it is zoned I–1, industrial, would have a deterring effect on trying to develop Tract 1 for apartments. The split zoning here, with C–1 to the east, could have a substantial diminution of value on Tract 1 also.

There is a buffer, approximately three hundred feet between the south side of Washington Boulevard and in the Fleetwood Addition. In addition to the industrial plaza above alluded to, there is a packing house (Zummo) near the Fleetwood Addition.

Having, we hope, clearly set forth the evidence presented below, we now turn to the Texas cases: The leading case defining the powers of city councils and the rights of landowners is *City of Waxahachie v. Watkins*, 154 Tex. 206, 275 S.W.2d 477 (1955). There the City of Waxahachie, using the powers granted it by *Tex.Rev.Civ.Stat.Ann. art. 1011a* (Vernon 1954), passed two ordinances amending its basic zoning ordinance adopted in 1937. This 1952 amendment changed " 'part of Block 28A . . . and part of Lot 5, Block 9, from its designation under the original zoning ordinance as in a dwelling district to a local retail district.' "

The court noted these factors shown in the testimony to support the city council's action:

"The size, shape and location of the subject property made it undesirable for residence purposes; its contiguous relation

and utilization with the tract lying immediately to the east already zoned for business purposes; the fact that all lots in that immediate area lying north, northeast, east, southeast, and south of the subject property are already devoted to business purposes; the fact that the subject property if developed in connection with the lots around it and already zoned for business would be entirely suitable for a retail shopping center and provide off-street parking for the public, which is a present need of the City of Waxahachie; the fact that use of the subject property as part of a local shopping center would lessen the congestion of traffic in the downtown area, would increase the wealth of the city by attracting new business and would tend to increase tax values in the city." (275 S.W.2d 481)

In upholding the ordinance, the court gave these directives:

1. In passing an ordinance the city council is exercising a legislative power, and the ordinance must be presumed valid.

2. The courts cannot interfere unless it appears that the ordinance represents a *clear abuse* of municipal discretion.

3. An extraordinary burden rests in one attacking the ordinance to show that no conclusive, or even controversial or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it.

4. The presumption of validity accorded original comprehensive zoning applies as well to an amendatory ordinance.

5. If reasonable minds may differ as to whether or not a particular zoning restriction has a substantial relationship to the public health, safety, morals or general welfare, no clear abuse of discretion is shown, and the restriction must stand as a valid exercise of the city's police power. (275 S.W.2d 480–81). See also *City of University Park v. Benners*, 485 S.W.2d 773, 779 (Tex.1972), and authorities cited; *Tilley v. Rogers*, 405 S.W.2d 220 (Tex.Civ.App.—Beaumont 1966, writ ref'd n. r. e.).

On the other hand, our Supreme Court does not presume the validity of "spot zoning," *Thompson v. City of Palestine*, 510 S.W.2d 579 (Tex.1974). This case defines spot zoning as "where a small area is singled out for different treatment from that accorded to similar surrounding land without any showing of justifiable changes in conditions . . . ." The presumption disappears if it is shown that a city acted arbitrarily rather than on the basis of changed conditions.

See *Hunt v. City of San Antonio*, 462 S.W.2d 536 (Tex.1971). There a residential spot was rezoned commercial principally because San Pedro Street had been widened to accommodate more traffic, and this resulted in substantial increase in traffic. The court held the ordinance void. See also, *Weaver v. Ham*, 149 Tex. 309, 232 S.W.2d 704 (1950).

It could be argued (as Salhab does) that the rezoning of Tract 1—the western portion—to residential (R–2) is indeed "spot zoning," since all property north, east, and west of it remains commercial. But, we find it unnecessary to decide this for the reason that none of the change of conditions recited in *City of Waxahachie v. Watkins*, supra, are present in the instant case. All of the evidence and inferences show that Tract 1 is not suitable for residential purposes; that it is in fact commercial property as so found by the City Planning and Zoning Commission. We recognize the heavy burden placed on Salhab by *City of Waxahachie v. Watkins*, supra; but a city council's power in rezoning is not unbridled, and we think it fair to say that our record here shows no justifiable reason for rezoning Tract 1 as residential (R–2).

The only suggestion in our record for a need to rezone Tract 1 to residential R–2 is the need for a subsidized housing in south Beaumont. But, it is not necessary to rezone to accomplish this; it can be done by eminent domain (*Tex.Rev.Civ.Stat.Ann. art. 1269k, §§ 8, 12* (Vernon 1963). See *City of Austin v. Teague*, 570 S.W.2d 389, 394 (Tex. 1978) (speaking of zoning to create public parks).

" 'To permit government, as a prospective purchaser of land, to give itself such an advantage is clearly inconsistent with the doctrine that the cost of community benefits should be distributed impartially among members of the community.' "

In the instant case, the evidence shows that Washington Boulevard between Eleventh Street and IH 10 is a very busy artery, with heavy industrial traffic. To the south of the Salhab tract, there has already been heavy commercialization. No property to its immediate north is zoned residential, and the eastern portion—now zoned C–1 together with the northwest corner returned to industrial by the Council—makes it truly an island set apart. The factors occurring in this area since 1955—all have been toward more commercialism, not less.

The only residential area near Tract 1 of the Salhab tract is the Fleetwood Addition. It was organized when Tract 1 was industrial and with this knowledge.

The width of Washington Boulevard and the buffer zone north of the Fleetwood Addition pose no problem from commercialization of Tract 1 of the Salhab property. And, anyway, IH 10 is just west of Fleetwood, near which is a packing plant and office buildings of an industrial plaza.

■ The value to the public of rezoning Tract 1 residential, if any, is but slight; so, its substantial diminution in value can be considered by this court. 1 A. Rathkopf, *The Law of Zoning and Planning*, Ch. 6, at 7 (3d ed. 1964).

■ As to the eastern portion of the tract, rezoned C–1, we believe the record does show justification for this change. It was so recommended by the witnesses Torres and Anderson, city employees, but called to testify by Salhab.

■ Salhab has two reply points: that the ordinance rezoning Tract 1 as R–2 is void because it attempts to rezone a larger tract than described in the published notice of hearing given under *Tex.Rev.Civ.Stat. Ann. art. 1011d* (Vernon 1963); Ordinance 78–95 is void because the purported description is not sufficiently definite and certain to inform persons of the property being rezoned.

The notice given was notice of the hearing held September 19, 1978. Plaintiff was present at the hearing, was represented by counsel and a real estate appraiser. By appearing at and participating in the hearing, plaintiff waived any defect in the notice. *White v. Zoning Board of Adjustment of the City of Arlington*, 363 S.W.2d 955, 959 (Tex.Civ.App.—Fort Worth 1962, writ ref'd n. r. e.). Zoning ordinances need not define district's boundaries· by metes and bounds, *Eckert v. Jacobs*, 142 S.W.2d 374, 377 (Tex.Civ.App.—Austin 1940, no writ). In view of our holdings above, it is unnecessary to consider City's other points of error.

As to the trial court's judgment holding Section A of Ordinance 78–95 (R–2 rezoning of Tract 1) as invalid, we affirm; to that part of his judgment holding Section B of Ordinance 78–95 invalid (the C–1 rezoning of Tract 2), we reverse and render judgment that such rezoning is valid. All costs are divided and assessed equally between appellant and appellee.

AFFIRMED in part; REVERSED and RENDERED in part.